## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **STATE OF LOUISIANA** | § | |
| **By and through its Attorney General,** | § | |
| **JEFF LANDRY** | § | **Civil Action** |
| | § | |
| *Plaintiff,* | § | **No. 3:19-cv-00638-SDD-RLB** |
| | § | |
| **v.** | § | |
| | § | |
| **BANK OF AMERICA, N.A., et al.,** | § | |
| | § | |
| *Defendants.* | § | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HILLTOP SECURITIES INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES UNDER FED. R. CIV. P. 12(B)(6)

---

# TABLE OF CONTENTS

I.     SUMMARY OF THE ARGUMENT ............................................................... 1

II.    FACTUAL BACKGROUND ........................................................................ 2

III.   LEGAL STANDARD ................................................................................ 4

    A.     Rule 12(B)(6) Standard ................................................................. 4

    B.     Rule 9(b) Heightened Pleading Standard ........................................ 6

IV.    ARGUMENT .......................................................................................... 8

    A.     Plaintiff's Group Pleading Tactic Fails to Provide Fair Notice of
        the Specific Claims and Allegations Levied against HTS. ............................ 8

    B.     Plaintiff Fails to Sufficiently Plead an Antitrust Claim Against
        HTS............................................................................................. 9

        1.     The SAC does not contain a single allegation that HTS
                participated in the "chat rooms" underlying the
                purported antitrust conspiracy. ........................................... 9

        2.     The mere allegation that Plaintiff purchased GSE bonds
                from HTS does not establish participation in a
                conspiracy. ...................................................................... 11

        3.     Plaintiff fails to allege that its injuries were proximately
                caused by HTS's alleged conduct and thus lacks
                standing to pursue an antitrust suit against HTS. ........................... 12

    C.     Plaintiff Fails to State a Claim under LUTPA. ................................. 14

        1.     Plaintiff fails to meet the heightened pleading
                requirement of Rule 9(b) to assert a LUTPA claim
                against HTS. ..................................................................... 14

        2.     Plaintiff fails to allege any actionable conduct under
                LUTPA. ........................................................................... 15

    D.     Plaintiff is not Entitled to Damages under LUTPA. ......................... 16

     E.     Plaintiff Fails to State a Claim for Negligence Against HTS. ...................... 18

V.    CONCLUSION ............................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321 (5th Cir. 2014) ................................................................................................................ 9

Alford v. Anadarko E&P Onshore, LLC, No. 13-5457, 2014 WL 1612454 (E.D. La. April 22, 2014) ............................................................................................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 5, 6, 13, 21

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S. Ct. 1884 (1990) ............... 13

*Barnes v. Bass*, 2006-80 (La. App. 3 Cir. 6/7/06), 933 So. 2d 241 ............................................ 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 6, 11, 12, 13

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003) ................................ 7

*Bobby & Ray Williams P'ship v. The Shreveport La. Hayride Co.*, 38 (La. App. 2 Cir. 4/21/04), 873 So. 2d 739 .................................................................................................. 17

*Bolanos v. Madary*, 609 So. 2d 927 (La. App. 4th Cir. 1992) .................................................... 17

*Brand Coupon Network,  LLC v. Cataline Mktg Corp.*, 748 F.3D 631 (5th Cir. 2014) ......... 5, 14

*Chemtreat, Inc. v. Andel*, No. Civ. A. 03-1917, 2003 WL 22466235 (E.D. La. Oct. 29, 2003) .................................................................................................................... 17

*Cooper v. Primary Care Sol., Inc.*, No. 16-259-EWD, 2017 WL 1086186 (M.D. La. Mar. 21, 2017) ....................................................................................................... 5, 7, 14

*D & J Tire, Inc. v. Bank One, La., Nat'l Ass'n*, 2002-0935 (La. App. 3 Cir. 2/5/03), 838, So. 2d 112 ........................................................................................................... 19

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) .................................................. 7

*Felder's Collision Parts, Inc. v. General Motors Co.*, 960 F. Supp. 2d 617 (M.D. La. 2013) ..................................................................................................................... 14

*Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278 (5th Cir. 2006) .................................. 8

*First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390 (E.D. La. 2016). 15, 16

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200 (5th Cir. 2009), cert. denied, 588 U.S. 873 (2009) ................................................................. 7, 14

*Golden Bridge Technology, Inc. v. Motorola, Inc.*, 547 F.3d 266 (5th Cir. 2008) ............... 11, 12

*In re GSE Bonds Antitrust Litig.*, Case No. 19-cv-1704, 396 F. Supp. 3d 354 (S.D.N.Y 2019) ......................................................................................................... 2, 3, 10

In re Hollander, 2009 WL 2707445 (E.D. La. Aug. 25, 2009) ................................................. 7

*Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314 (5th Cir. 2009) ........................................ 9

Lone Star Ladies Inv. Club v. Schlotzsky's, Inc., 238 F.3d 363 (5th Cir. 2001) ................... 6

*McNeely v. Ford Motor Co.*, 98-2139 (La. App. 1 Cir. 12/28/99), 763 So. 2d 659 ................. 21

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ................................................... 12

*NOLA 180 V. Treasure Chest Casino, LLC*, 11-853 (La. App. 5 Cir. 3/27/12), 91 So. 34 446 ................................................................................................................................ 18

*Rodrigue v. Seafood Source of Louisiana, Inc.*, 2014 WL 4986840 (M.D. La. Sept. 15, 2014) ............................................................................................................................... 5

*Sanger Ins. Agency v. HUB Intern., Ltd.*, 802 F.3d 732 (5th Cir. 2015) .................................. 13

*Satterfeal v. LoanCare, LLC*, Civil Action No: 3:18-1021-JWD-EWD, 2019 WL 5777379 (M.D. La. Nov. 5, 2019) ............................................................................ 19, 20

*Sheppard v. Liberty Mutual Ins. Co.*, No. 16-2401, 2016 WL 6807400 (E.D. La. Nov. 17, 2016) ................................................................................................................... 6, 7

*State ex rel. Guste v. General Motors Corp.*, 354 So. 2d 770 (La. App. 4th Cir., 1978)........... 16

*State v. Astra Zeneca AB*, 2016-1073 (La. App. 1 Cir. 4/11/18), 249 So. 3d 38) .................... 16

*United States ex. rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ............................... 6

*Vaughn Medical Equip. Repair Serv., L.L.C. v. Jordan Reses Supply Co.*, Civil Action No. 10-00124, 2010 WL 3488244 (E.D. La. Aug. 26, 2010)........................................ 13

*Veritext Corp. v. Bonin*, 471 F. Supp. 3d 778, 2019 WL 4738207 (E.D. La. Sept. 27, 2019) ............................................................................................................................... 9

Wagoner v. Exxon Mobil Corp., No. 09-07257, 2010 WL 3168382 (E.D. La. Aug. 9, 2010) ..................................................................................................................... 7

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019) ...................................... 5, 6

**Statutes**

15 U.S.C. § 1 ......................................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ................................................................................................. *passim*

Fed. R. Civ. P. 8 ................................................................................................................ 4, 8

Fed. R. Civ. P. 9(b) ....................................................................................................... *passim*

Fed. R. Evid. 201 ................................................................................................................. 6

La. R.S. 51:1405 ................................................................................................................ 17

La. R.S. 51:1407A .............................................................................................................. 16

La. R.S. 51:1407B .............................................................................................................. 16

La. R.S. 51:1408 ................................................................................................................ 16

La. R.S. 51:1408(5) ............................................................................................................ 16

La. R.S. 51:1409 ................................................................................................................ 17

La. Rev. Stat. Ann. § 51:1409(A) ....................................................................................... 17

**Other Authorities**

Louisiana Unfair Trade Practices and Consumer Protection Act ............................... *passim*

Pursuant to Local Civil Rule 7(d), Defendant Hilltop Securities Inc. ("HTS") hereby submits to the Honorable Court this memorandum of law in support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") for Damages Under FED. R. CIV. P. 12(B)(6) for failure to state a claim upon which relief can be granted (Docket No. 130).

## I.    SUMMARY OF THE ARGUMENT

In its Second Amended Complaint, Plaintiff State of Louisiana complains of a purported conspiracy among over 20 banking organizations and broker dealers to fix prices of bonds issued by government-sponsored entities ("GSEs") over a seven-year period (2009-2016).  Of the 22 named defendants in this action, however, HTS is **one of the only** two defendants that the Plaintiff never alleges was involved in the conspiracy. *See* Docket No. 88-3, 39–59.  HTS's only supposed wrongdoing was simply selling GSE bonds to Plaintiff.  Plaintiff's claims against HTS are deficient and must be dismissed pursuant to Rule 12(b)(6) for several reasons.

*First*, the SAC utilizes a group-pleading tactic which fails to provide fair notice of the specific claims and allegations levied against HTS.

*Second*, Plaintiff's claim under the Sherman Act fails because the SAC lacks a single allegation that HTS engaged in anticompetitive conduct.  Plaintiff does not allege that HTS directly participated or engaged in any alleged misconduct contributing to the conspiracy, or that its injuries were proximately caused by HTS's conduct.

_**Third**_, under Rule 9(b)'s heightened pleading standard, Plaintiff fails to allege with sufficient particularity the bases for its claim against HTS under the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA").

_**Fourth,**_ Plaintiff is not entitled to the damages under LUTPA.

_**Fifth**_, Plaintiff fails to state a claim for negligence against HTS.  Plaintiff does not identify any contractual, statutory, regulatory, or other basis that would give rise to the duty Plaintiff alleges HTS owed it.  Nor does Plaintiff allege sufficient facts as to how HTS breached such duty or that Plaintiff was injured due to a breach of this duty.

## II.    FACTUAL BACKGROUND

HTS is a registered broker-dealer of GSE bonds.[1]  GSEs, which include the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), the Federal Farm Credit Banks ("FFCB"), and the Federal Home Loan Banks ("FHLB"), are privately run enterprises sponsored by the federal government that finance their operations by issuing or trading these bonds with investors.  Banking organizations and dealers typically work together as a syndicate to purchase the bonds from the GSEs and distribute them to bulk buyers in the primary market who hold the GSE bonds and do not sell them to other investors. During this syndication process, the banking organizations and dealers are permitted to

---

[1] HTS refers the Court to the "Factual Background" section of the district court's order in _In re GSE Bonds Antitrust Litig._, Case No. 19-cv-1704, 396 F. Supp. 3d 354, 364 (S.D.N.Y 2019).

communicate with each other regarding the placement of the bonds in the primary market. Once the GSE bonds are declared "free-to-trade" or "FTT," the bond dealers compete against one another to sell the newly issued bonds to investors in the secondary market.

On September 23, 2019, Plaintiff filed its Complaint for Damages (Docket No. 1) asserting a sweeping anticompetitive conspiracy by Defendants other than HTS (the "Conspiring Defendants") to inflate the prices of the bonds being sold in the secondary market. Plaintiff alleges that the Conspiring Defendants communicated in chatrooms after the syndication process to fix the prices of the bonds being sold to investors between 2009 and 2016.

The Complaint for Damages copies—virtually verbatim—the complaint in a now-largely settled putative class action in the United States District Court for the Southern District of New York, *In re GSE Bonds Antitrust Litig.*, Case No. 19-cv-1704 (S.D.N.Y.) (the "New York Action"), involving 20 of the same Defendants in this case. Notably, HTS was not a defendant in the New York Action, but ironically was identified as a class member.

Several of the Defendants in the New York Action moved to dismiss the Complaint for Damages pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiff failed to plausibly allege any specific participation in the alleged conspiracy by these Defendants. *See* Docket Nos. 17, 19, 34 and 39. Thereafter, on December 3, 2019, Plaintiff filed its First Amended Complaint for Damages ("FAC"), adding Hilltop Holdings, Inc. *d/b/a* Hilltop

Securities ("HTH") as a defendant, and asserting additional claims of negligence and deceptive conduct under LUTPA. *See* Docket No. 41.

On January 9, 2020, HTH filed a Motion to Dismiss Plaintiff's First Amended Complaint for Damages under Fed. R. Civ. P. 12(b)(2) and 12(b)(6), on the basis that HTH does not have sufficient minimum contacts with this District, is not the correct party, and no plausible claim had been stated against it. *See* Docket No. 71. Thereafter, on February 3, 2020, Plaintiff filed its Motion for Leave to File Second Amended Complaint for Damages, wherein it omitted HTH and sought to add HTS as a party. The Court granted Plaintiff leave to file the SAC on July 13, 2020. *See* Docket Nos. 129, 130.

For the reasons explained below, the Court should grant HTS's motion and dismiss all of Plaintiff's claims against HTS.

### III.    <u>LEGAL STANDARD</u>

A.    **Rule 12(B)(6) Standard**

This Court reviews a motion to dismiss under Rule 12(b)(6) to determine whether the complaint meets the legal standard for pleading found in Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8 does not require 'detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation.' " *Brand Coupon Network, LLC v. Cataline Mktg Corp.*, 748 F.3D 631, 634 (5th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Dismissal under Rule 12(b)(6) is warranted "if the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—**but it has not 'shown'**—that the pleader is entitled to relief." *Id*. (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted) (emphasis added). "Accordingly, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *Id*.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor does a complaint that tenders "naked assertions devoid of further factual enhancement" suffice. *Id*. "As this court has previously explained, 'stated differently, a complaint must state more than labels and conclusions'; 'a formulistic recitation of the elements of a cause of action will not do.'" *Cooper v. Primary Care Sol., Inc.*, No. 16-259-EWD, 2017 WL 1086186, at *7 (M.D. La. Mar. 21, 2017) (quoting *Rodrigue v. Seafood Source of Louisiana, Inc.*, 2014 WL 4986840, at *2 (M.D. La. Sept. 15, 2014)). When plaintiffs "have not nudged their claims across the

line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Iqbal*, 556 U.S. at 680.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) [*sic*] facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker*, 938 F.3d at 735.

## B.    Rule 9(b) Heightened Pleading Standard

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for fraud claims. *Sheppard v. Liberty Mutual Ins. Co.*, No. 16-2401, 2016 WL 6807400, at *2 (E.D. La. Nov. 17, 2016). "The purpose of Rule 9(b) is to 'ensure the complaint provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs.' " *Id*. (citing *United States ex. rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)) (internal citations and quotations omitted).

The Fifth Circuit has instructed that "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *see also, Alford v. Anadarko E&P Onshore, LLC*, No. 13-5457, 2014 WL 1612454, at *8 (E.D. La. April 22, 2014) (same). "Fraud

can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud even if the term 'fraud' is not used." *Wagoner v. Exxon Mobil Corp.*, No. 09-07257, 2010 WL 3168382, at * 2 (E.D. La. Aug. 9, 2010) (citing *In re Hollander*, 2009 WL 2707445, at * 4 (E.D. La. Aug. 25, 2009)).

Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." *Sheppard*, 2016 WL 6807400, at *2. The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009), cert. denied, 588 U.S. 873 (2009). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).

State-law fraud claims, including claims brought under LUTPA, are subject to Rule 9(b)'s heightened pleading requirement. *Cooper*, 2017 WL 1086186, at *8–9 (applying Rule 9(b)'s heightened pleading requirement to plaintiffs' LUTPA claims where plaintiffs alleged that the defendants used deceptive practices and engaged in fraudulent conduct to coerce and induce them into entering into a franchise investment scheme and fraudulent investment contracts); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

# IV.    ARGUMENT

**A.    Plaintiff's Group Pleading Tactic Fails to Provide Fair Notice of the Specific Claims and Allegations Levied against HTS.**

As a preliminary matter, Plaintiff's generalized and sweeping group-pleading tactic fails to satisfy the basic pleading requirements of Rule 8 and does not provide HTS with fair notice of the specific claims and allegations levied against it.

The SAC **does not provide a single factual allegation** upon which the Court could infer that HTS participated in the alleged conspiracy.  HTS is only mentioned **once out of the 163 paragraphs** relating to Plaintiff's antitrust conspiracy allegations, even though it asserts a claim under the Sherman Act against all Defendants.  *See* SAC ¶¶ 110–273.  Even then, the reference to HTS is found in a table of transactions which purports to identify GSE bonds sold by each Defendant—but which makes no attempt to identify any unlawful or anticompetitive conduct by HTS.  *Id.* ¶ 267 (identifying a purchase of $413,116,000 in GSE bonds from HTS).

Plaintiff's attempt to lump HTS with other broker-dealer Defendants without any specified allegations against HTS fails to provide fair notice of how HTS is alleged to have conspired, with whom, and for what purpose. The Fifth Circuit does not expressly permit or allow group pleadings and, indeed, has rejected group pleadings in the context of securities litigation.  *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285 (5th Cir. 2006) (affirming district court's grant of defendant's 12(b)(6) motion to dismiss).

**B.    Plaintiff Fails to Sufficiently Plead an Antitrust Claim Against HTS.**

Plaintiff's Sherman Act claim additionally fails as a matter of law because the SAC does not allege that HTS participated in the alleged conspiracy or specifically engaged in any activity that caused an injury to competition.

In order to establish a Section 1 violation under the Sherman Act, a plaintiff must show that the defendants "(1) engaged in a conspiracy (2) that produced some anticompetitive effect (3) in the relevant market." *Veritext Corp. v. Bonin*, 471 F. Supp. 3d 778, 784, 2019 WL 4738207 (E.D. La. Sept. 27, 2019) (quoting *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 327 (5th Cir. 2014)). "Additionally, to seek relief for anti-competitive conduct under the Sherman Act, the plaintiff must show both an actual injury and an 'antitrust injury'—i.e., the plaintiff must show that 'the defendants' activities cause an injury to competition.' " *Id*. (quoting *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318–19 (5th Cir. 2009).

1.    The SAC does not contain a single allegation that HTS participated in the "chat rooms" underlying the purported antitrust conspiracy.

The gravamen of Plaintiff's antitrust claim is that traders acting on behalf of the named defendants communicated in chatrooms wherein they agreed to fix prices at a specific, inflated level for newly issued GSE bonds prior to being released in the secondary market.  Plaintiff alleges that the Defendants "used their electronic group chat rooms, namely a program called Instant Bloomberg, to maintain their collusive price-fixing scheme and coordinate in real time to share proprietary customer information and

align their pricing throughout the life of a GSE bond." *See* SAC ¶193.  Yet the SAC does not contain a single allegation that HTS participated in these chat rooms.  In fact, of the 22 named defendants in this action, HTS is **one of the only** two defendants who is not alleged to have been involved in any of the chatroom communications.  *See* Docket No. 88-3, 39–59.  Nor does the SAC contain any allegation that HTS otherwise communicated with other GSE bond dealers about any of the bonds in which Plaintiff allegedly invested.

Plaintiff's SAC consists almost entirely of allegations copied from the Third Consolidated Amended Class Action Complaint in the New York Action.  Notably, in the New York Action, Judge Rakoff determined that the only actionable allegations of antitrust price-fixing conspiracy were based on chatroom transcripts in which traders on behalf of only five of the defendants in that action allegedly discussed initial pricing of bonds during the FTT period.  New York Action, 396 F. Supp. 3d at 363.  Judge Rakoff dismissed the antitrust claims against the defendants who were not alleged to have participated in the anticompetitive chats, noting that "plaintiffs must still adduce some reason to believe that the particular defendants named in this suit were involved."  *Id.*  Consistent with the law in the Fifth Circuit, the court held that "[e]ach defendant is entitled to know how he is alleged to have conspired, with whom and for what purpose.  Mere generalizations as to any particular defendant—or even defendants as a group— are insufficient." *Id.*

Plaintiff's SAC suffers from the same fatal flaw here: it has failed to allege how HTS conspired in the price-fixing, with whom, and for what purpose. Accordingly, Plaintiff's antitrust claim against HTS should be dismissed.

2.    The mere allegation that Plaintiff purchased GSE bonds from HTS does not establish participation in a conspiracy.

Recognizing that its antitrust claim against HTS is deficient, Plaintiff attempts to lump HTS with the Conspiring Defendants by identifying transactions made between 2010 and 2013 which purportedly were fixed at artificial prices caused by Defendants' conspiracy. There is only one paragraph that discusses HTS in Plaintiff's 163-paragraph long antitrust discussion. In that paragraph, Plaintiff makes the unremarkable assertion that it purchased GSE bonds from HTS sometime between July 1, 2012 and June 20, 2013. *See* SAC ¶267. Plaintiff fails to offer any plausible fact, however, upon which the Court could infer that HTS engaged in any anticompetitive behavior by lawfully transacting in bonds with Plaintiff—arms-length transactions which HTS is licensed to perform. *See* SAC ¶267.

The crucial question in a Section 1 claim "is whether the challenged anticompetitive conduct stems from independent decision or from an agreement." *Golden Bridge Technology, Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544). "The plaintiff must present evidence that the defendants engaged in concerted action, defined as having 'a conscious commitment to a common scheme

designed to achieve an unlawful objective." *Id*. (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). "Independent parallel conduct, or even conduct among competitors that is consciously parallel, does not alone establish the contract, combination, or conspiracy required by § 1." *Id*. (citing *Twombly*, 550 U.S. at 553).

The SAC fails to allege whether the GSE bonds were sold to Plaintiff by HTS during the syndication period—during which time Defendants could communicate freely with one another, as alleged in the SAC, *see* SAC ¶ 192—or whether those bonds were sold during the FTT period in the secondary market. But even if those bonds were sold to Plaintiff during the FTT period, these transactions would amount to nothing more than independent parallel conduct. The SAC is devoid of any allegation that HTS consciously engaged in a concerted action with the Defendants to fix the price of GSE bonds sold in the secondary market, or even that HTS was conscious of the parallel conduct. *See Golden Bridge Technology, Inc.*, 547 F.3d at 271.

3. <u>Plaintiff fails to allege that its injuries were proximately caused by HTS's alleged conduct and thus lacks standing to pursue an antitrust suit against HTS.</u>

Plaintiff fails to offer any plausible fact upon which the Court could infer that HTS's conducted impacted Plaintiff's purchases of GSE bonds. The single allegation against HTS amounts to nothing more than an inference that HTS lawfully transacted in bonds with Plaintiff—transactions which HTS was licensed to perform.

"Standing to pursue an antitrust suit exists only if a plaintiff shows: 1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties not better situated to bring suit." *Sanger Ins. Agency v. HUB Intern., Ltd.*, 802 F.3d 732, 737 (5th Cir. 2015). Here, even if Plaintiff's allegations of price-fixing amount to an antitrust violation, Plaintiff has not pleaded that its purported injuries were proximately caused by HTS's alleged conduct. *See Vaughn Medical Equip. Repair Serv., L.L.C. v. Jordan Reses Supply Co.*, Civil Action No. 10-00124, 2010 WL 3488244 at *12 (E.D. La. Aug. 26, 2010) citing *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S. Ct. 1884 (1990) ("Antitrust injury does not arise for purposes of [15 U.S.C. § 15] ... until a private party is adversely affected by an anticompetitive aspect of the defendant's conduct."). Thus, Plaintiff lacks standing to sue HTS under the Sherman Act.

In sum, under no imagination of the *Twombly/Iqbal* pleading standard has Plaintiff met its burden to show that it is entitled to relief under the Sherman Act. The SAC contains no plausible allegation that HTS participated in the price-fixing chatrooms, that the GSE bonds Plaintiff purchased from HTS were a result of HTS's alleged participation in the scheme, or that its injuries were proximately caused by HTS's alleged conduct. Plaintiff's antitrust claim against HTS fails as a matter of law and, accordingly, should be dismissed with prejudice. Plaintiff has now had three separate opportunities to state a claim for relief plausible on its face, yet has failed each time.

C.    **Plaintiff Fails to State a Claim under LUTPA.**

    1.    <u>Plaintiff fails to meet the heightened pleading requirement of Rule 9(b) to assert a LUTPA claim against HTS.</u>

Plaintiff alleges that HTS is liable under LUTPA, claiming that HTS engaged in deceptive business practices regarding the advertisement of its brokerage services, including making false statements regarding the use of its experience and skill in recommending investments.  SAC ¶ 291.

This Court has consistently held that "[w]here a plaintiff's LUTPA claim is based on alleged fraudulent misrepresentation, the LUTPA claim must meet the heightened pleading requirements of Rule 9(b).  *Brand Coupon Network, LLC v. Cataline Marketing Corp.*, 2014 WL 6674034, at *5 (M.D. La. Nov. 24, 2015) (applying Rule 9(b)'s heightened pleading standard in analyzing plaintiff's LUTPA claim); *see also Cooper*, 2017 WL 1086186, at *8–9 (same); *Felder's Collision Parts, Inc. v. General Motors Co.*, 960 F. Supp. 2d 617, 638–39 (M.D. La. 2013) (same).

Plaintiff's threadbare allegations, however, fall woefully short of this standard. Beyond a conclusory allegation that HTS made unidentified "false statements," and as a result sold securities to Plaintiff at "supra competitive prices" without vetting these transactions, *see* SAC ¶¶ 291–293, Plaintiff fails to identify the "who, what, when, where, and why" regarding the alleged false or fraudulent statements.  *See Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) ("This Circuit's precedent interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements

contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'").

2.    Plaintiff fails to allege any actionable conduct under LUTPA.

Even if Plaintiff met the Rule 9(b) heightened pleading requirements, Plaintiff does not allege any actionable under LUTPA. *See First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 405–06 (E.D. La. 2016). "A successful LUTPA claim requires a showing that the defendant engaged in conduct that 'offends established public policy and. . .is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* "In fact, the range of prohibited practices under LUTPA is extremely narrow." *Id*.

First, Plaintiff does not expressly identify the alleged deceptive business practice HTS engaged in or any purportedly false statements. *See* SAC ¶¶ 289–295. At most, as a part of its *negligence* claim, Plaintiff points to a marketing presentation from April 2017 wherein HTS states that its mission is to provide expert financial guidance and states that it offers specialized knowledge and insight for its clients. SAC ¶ 284. But Plaintiff fails to allege how these statements are fraudulent or false, or even that Plaintiff read and relied on those statements in making its alleged purchases from HTS. In fact, Plaintiff alleges elsewhere in the SAC that it purchased GSE bonds from HTS between July 1, 2012 and June 30, 2013—several years before HTS even created the April 2017 presentation which purportedly induced Plaintiff to buy GSE bonds from HTS. SAC ¶275

"Fraud, misrepresentation, deception, and similar conduct is prohibited [under LUTPA], mere negligence is not." *First Am. Bankcard, Inc.*, 178 F. Supp. 3d at 406. Plaintiff's LUTPA claim is merely a re-packaging of its negligence claim, which neither satisfies the Rule 9(b) heightened pleading standard, nor is even the type of conduct contemplated as actionable under LUTPA. *See id.* (dismissing LUTPA claim where plaintiff did not include "enough details to determine whether the actions alleged are 'immoral, unethical, oppressive, unscrupulous, or substantially injurious' so as to give rise to a LUTPA claim").

## D.    Plaintiff is not Entitled to Damages under LUTPA.

Plaintiff "seeks payment of all damages incurred and all remedies allowed pursuant to LUTPA" including monetary damages, pursuant to Louisiana Revised Statutes 51:1408.  SAC ¶ 295.  Plaintiff, however, is not entitled to damages under LUTPA.

LUTPA authorizes the Attorney General the right to bring an action for injunctive relief (La. R.S. 51:1407A), request civil penalties(La. R.S. 51:1407B), and restitution (La. R.S. 51:1408(5).  *See State v. Astra Zeneca AB*, 2016-1073 (La. App. 1 Cir. 4/11/18), 249 So. 3d 38, 45–46) (citing *State v. Abbott Labs., Inc.*, 2015-1626 (La. App. 1 Cir.  10/21/16), 208 So. 3d 384, 389).   It **does not** authorize the Attorney General the right to bring an action for damages, which are only available in "private actions" brought pursuant to La. R.S. 51:1409(A)—a provision that is not asserted by Plaintiff in the SAC.  *See State ex rel. Guste v. General Motors Corp.*, 354 So. 2d 770 (La. App. 4th Cir., 1978) ("[W]e have little difficulty

in concluding that. . .the Attorney General, on the consumer's behalf, [is] not entitled to seek, in a class action, actual damages.") (citing La. R.S. 51:1409). Thus, even if the LUTPA claim proceeds—which HTS contends should not—Plaintiff is not entitled to seek damages.

Moreover, to recover damages, LUTPA requires that a plaintiff must have suffered an "ascertainable loss" caused "as a result of" the use by "another person of an unfair deceptive method, act, or practice declared unlawful by R.S. 51:1405." La. R.S. § 51:1409(A). Louisiana courts interpreting LUTPA have thus required, first, that a plaintiff allege an actual loss of money that was caused by defendants' actions. *See, e.g., Bolanos v. Madary*, 609 So. 2d 927, 977 (La. App. 4th Cir. 1992); *see also Bobby & Ray Williams P'ship v. The Shreveport La. Hayride Co.*, 38, 224 (La. App. 2 Cir. 4/21/04), 873 So. 2d 739, 746 (no cause of action under LUTPA in the absence of allegations of ascertainable loss). General allegations of damage are insufficient. *See, e.g., Chemtreat, Inc. v. Andel*, No. Civ. A. 03-1917, 2003 WL 22466235, at *3 (E.D. La. Oct. 29, 2003) ("simply requesting damages is not enough to demonstrate" ascertainable loss).

Here, Plaintiff alleges **no facts** demonstrating any ascertainable loss resulting from HTS's sale of GSE bonds to Plaintiff as a result of HTS's allegedly deceptive actions. To the contrary, Plaintiff claims that the transaction it entered into with HTS from 2012 to 2013 was "directly caused by Defendants' conspiracy" to fix the prices of the GSE bonds

in the secondary market—a conspiracy which Plaintiff does not even allege HTS participated in.  SAC ¶ 267.

Second, Plaintiff is required not only to allege that it "suffere[ed] an ascertainable loss," but also that the loss resulted from "another's use of unfair methods of competition and unfair or deceptive acts or practices."  *See NOLA 180 v. Treasure Chest Casino, LLC*, 11-853 (La. App. 5 Cir. 3/27/12), 91 So. 3d 446, 450.  Plaintiff entirely fails to allege that it suffered any loss caused by HTS's allegedly "deceptive" representations or conduct.

Thus, even if the Court found that Plaintiff has a private right of action for damages against HTS, Plaintiff fails in pleading the two-prong test that: "1) the person must suffer an ascertainable loss; and 2) the loss must result from another's use of unfair methods of competition and unfair or deceptive acts or practices."  *NOLA 180*, 91 So. 34 at 450. Accordingly, Plaintiff's claim for damages against HTC under LUTPA must be denied.

**E.    Plaintiff Fails to State a Claim for Negligence Against HTS.**

Plaintiff's negligence cause of action against HTS similarly fails to state a plausible claim for relief.  Plaintiff claims that as a broker-dealer of the GSE bonds, HTS owed a duty of care to its customers, including the State of Louisiana.  SAC ¶ 279.  Plaintiff further alleges, without any factual support, that the duty of care includes "a duty to ensure that the investments that they offered or brokered were suitable for the State of Louisiana as

a client, and a duty to use reasonable care in recommending investments to the State of Louisiana." *Id*.

To state a viable claim for negligence in Louisiana, a plaintiff must allege: (1) the existence of a duty to conform one's behavior to a specific standard; (2) the defendant failed to conform to that duty; (3) the conduct was a cause in fact of the plaintiff's injuries; (4) the conduct was a legal cause of the plaintiff's injuries; and that (5) actual damages resulted." *Satterfeal v. LoanCare, LLC*, Civil Action No: 3:18-1021-JWD-EWD, 2019 WL 5777379, at *4 (M.D. La. Nov. 5, 2019) (citing *Barnes v. Bass*, 2006-80 (La. App. 3 Cir. 6/7/06), 933 So. 2d 241, 244. Plaintiff's negligence claim is deficient for several reasons.

First, Plaintiff pleads no statutory, regulatory, contractual, or other basis that gives rise to such a duty, especially in the context of two sophisticated parties conducting arms-length transactions. Plaintiff alleges that between July 1, 2010 and June 30, 2013, it entered into contracts with HTS to purchase FFB securities in the amount of $413,116,000.00, but fails to identify any such contract, let alone any contractual provision wherein HTS agreed to bear a duty to ensure investments were suitable for Plaintiff, a duty to recommend or avoid recommending particular investments, or a duty to evaluate the risk of financial harm to Plaintiff. SAC ¶275.; *see Satterfeal*, 2019 WL 5777379, at *4 (dismissing negligence claim where plaintiffs failed to allege sufficient facts to show that defendants specifically owed them a duty of care,); *see also D & J Tire, Inc. v. Bank One, La., Nat'l Ass'n*, 2002-0935 (La. App. 3 Cir. 2/5/03), 838, So. 2d 112, 114 (trial court erred in finding liability

for negligent misrepresentation absent a contractual relationship giving rise to a duty of care).

Second, even if HTS owed a duty of care to Plaintiff, Plaintiff entirely fails to allege how HTS failed to conform to that duty. The sole basis for Plaintiff's negligence claim against HTS hinges on the mere fact that HTS authored a Power Point Presentation in April 2017—several years after Plaintiff allegedly purchased GSE bonds from HTS—wherein it stated that its mission is to provide expert financial guidance and that it offers specialized knowledge and insight to its clients. SAC ¶ 284. Plaintiff alleges that HTS "knew or should have known that the bid-ask spreads were artificially widened between 2009 and 2016; that the prices were artificially higher for newly issued GSE bonds; and that the prices for most recently issued GSE bonds were increased in the days before each new issuance." SAC ¶287. But Plaintiff makes **no allegation** that HTS failed to provide expert financial advice or lacks specialized knowledge regarding investments, or that it breached a duty.

Moreover, other than the bare-bones allegations above, Plaintiff fails to plead any facts that plausibly support that HTS knew or should have known that the bid-ask spreads were artificially widened between 2009 and 2016. Nor does Plaintiff make any allegation that HTS had or should have had knowledge of the alleged chatroom conspiracy, particularly where Plaintiff does not even allege that HTS participated in the chatrooms. *See Satterfeal*, 2019 WL 5777379, at *4 (dismissing negligence claim where

plaintiffs did not allege how defendant may have breached any duty it may have owed them).

The SAC also fails to plead facts sufficient to establish that HTS's alleged breach of a non-existent duty was the cause-in-fact or legal cause of Plaintiff's injuries. To the extent Plaintiff suffered any damages in connection with the alleged price-fixing conspiracy, it has failed to allege how it suffered damages as a result of negligence by HTS. Indeed, where Plaintiff does not even allege that HTS participated in the chat rooms or otherwise knew or should have known of any alleged price-fixing conspiracy, it cannot be held liable for damages. *See McNeely v. Ford Motor Co.*, 98-2139 (La. App. 1 Cir. 12/28/99), 763 So. 2d 659, 667 (holding that a defendant is not "liable for damages caused by separate, independent or intervening causes").

As with its antitrust and LUTPA claims, Plaintiff offers nothing more than threadbare recitals of an alleged existence of a duty of care owed by HTS to Plaintiff, supported by mere conclusory statements lacking any basis in fact or in law. *See Iqbal*, 556 U.S. at 678. Plaintiff further fails to plausibly allege that HTS breached any duty purportedly owed to Plaintiff, or that any alleged breach on the part of HTS caused Plaintiff's injury. Accordingly, Plaintiff's negligence claim should be dismissed.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, HTS respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Second Amended Complaint for Damages Under Fed. R. Civ. P. 12(b)(6) and dismiss, with prejudice, Plaintiff State of Louisiana's claims against HTS.  HTS requests a hearing on its motion at the Court's earliest convenience, and requests all other relief to which it may be entitled.

DATED: July 27, 2020                              Respectfully submitted,

/s/ *Alan Dabdoub*
Alan Dabdoub
Texas Bar No. 24056836
Louisiana Bar No. 25019
adabdoub@lynnllp.com
Barira Munshi (to be admitted *pro hac vice*)
Texas Bar No: 24095924
bmunshi@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR DEFENDANT
HILLTOP SECURITIES INC.**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on the 27th day of July, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


<u>*/s/ Alan Dabdoub*</u>
Alan Dabdoub