# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*     \*

| | |
|---|---|
| STATE OF LOUISIANA, | \* |
| By and through its Attorney General, | \* |
| JEFF LANDRY, | \*  CIVIL ACTION |
| | \* |
| Plaintiff, | \*  NO. 3:19-cv-00638-SDD-SDJ |
| | \* |
| v. | \*  JUDGE SHELLY D. DICK |
| | \*  MAGISTRATE JUDGE |
| BANK OF AMERICA, N.A., et al., | \*  SCOTT D. JOHNSON |
| | \* |
| Defendants. | \* |
| | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*     \*

## MEMORANDUM OF LAW IN SUPPORT OF
## ROBERT W. BAIRD & CO. INCORPORATED'S MOTION TO DISMISS
## <u>PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………..1

ARGUMENT……………………………………………………………………......2

I.    LEGAL STANDARD .................................................................................... 2

II.    THE SAC FAILS TO STATE A SHERMAN ACT CLAIM AGAINST BAIRD........ 3

    A.  Plaintiff Fails to Allege that Baird Participated in the Alleged Conspiracy ........ 4

    B.  Plaintiff's Impermissible Group Pleading Fails to State a Claim Against Baird . 8

    C.  The Statistical Analysis Alleged in the Amended Complaint Does Not Show Baird's Involvement in the Alleged Conspiracy .................................................... 8

    D.  Plaintiff Does Not Allege Baird's Participation in the Alleged Conspiracy Through Parallel Conduct and Plus Factors ............................................. 9

III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BAIRD UNDER LOUISIANA LAW ................................................................................. 10

    A.  Plaintiff Fails to State a Claim for Negligence Against Baird ............................ 10

        1.  Plaintiff Has Failed to Establish that Baird Owed Louisiana Any Legally Cognizable Duty ......................................................................... 10

        2.  There Are No Allegations Sufficient to Show That Baird Breached Any Alleged Duty. ......................................................................... 12

    B.  Plaintiff Has Failed to Plead a Violation of Louisiana's Unfair Trade Practices and Consumer Protection Act ............................................................... 14

        1.  Baird is Exempt from Plaintiff's LUTPA Claim ................................... 14

        2.  The Complaint Fails to State a LUTPA Claim Against Baird........................ 15

        3.  The State is Not Entitled to Damages Under LUTPA ..................................... 18

    CONCLUSION ......................................................................................... 20

## TABLE OF AUTHORITIES

NO TABLE OF AUTHORITIES ENTRIES FOUND.**Statutes**

LA. REV. STAT. ANN. § 6:1124 ................................................................................. 12

LA. REV. STAT. ANN. § 51:1402.................................................................................20

LA. REV. STAT. ANN. § 51:1405.................................................................................15

LA. REV. STAT. ANN. § 51:1407.................................................................................18

LA. REV. STAT. ANN. § 51:1408.................................................................................18

LA. REV. STAT. ANN. § 51:1409.............................................................................18-19

## PRELIMINARY STATEMENT

Plaintiff's SAC, likes its two predecessor complaints, alleges no facts that would plausibly support the claim that Defendant Robert W. Baird & Co. Incorporated ("Baird") participated in the seven-year price fixing conspiracy alleged by Plaintiff.  No facts whatsoever are pleaded to suggest that Baird participated or was even mentioned in any of the chatroom conversations on which Plaintiff heavily relies as evidence of the alleged conspiracy.  Nor does the SAC allege that Baird engaged in any "parallel conduct" or "plus factors" on which the court could infer Baird's participation.  Instead, the only specific, non-conclusory allegations about Baird that even relate to the subject matter of the case is that it was licensed to and did trade bonds issued by government sponsored entities ("GSE Bonds") with Plaintiff.  This falls woefully short of the pleading standard for stating a claim for relief under the antitrust laws.  Plaintiff's antitrust claim against Baird should be dismissed.

Plaintiff's negligence claim against Baird is similarly deficient.  Plaintiff does not, and cannot, plead the existence of any legally cognizable duty of care that Baird owed Plaintiff—an essential element of a negligence claim.  Baird owed no fiduciary or other duties to Plaintiff and nothing that Plaintiff alleges suggests otherwise.  Plaintiff allegedly purchased GSE Bonds from Baird but that is the extent of their relationship.  Similarly lacking are any facts giving rise to a plausible inference that Baird breached any duty of care to Plaintiff, if it had such a duty.  For these reasons, Plaintiff's negligence claim against Baird should be dismissed.

Plaintiff's Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") claim fares no better.  Louisiana's statutory scheme exempts financial institutions, such as Baird, that are registered with Louisiana's Office of Financial Institutions from LUTPA claims.  Even if the exemption did not apply, there is no plausible LUTPA claim alleged as to Baird.  Plaintiff's

1

LUTPA theory is premised on the notion that general statements on Baird's website that Baird "has skill in recommending investments" are false. SAC ¶ 291. No facts are pled, however, to show that Baird did not, in fact, have such skill, nor could there be. Plaintiff has not even attempted to allege that Baird engaged in any "unfair" competitive conduct—the other prong of LUTPA—or that it acted with the specific intent to harm competition, which is an element of a LUTPA claim. Moreover, the provision of LUTPA under which the Attorney General sues does not permit a claim for damages on behalf of the State, and Plaintiff fails to plead that it suffered losses as a result of the specific conduct alleged to violate LUTPA.

Because the SAC does not state a plausible claim for relief against Baird, all of Plaintiff's claims against Baird should be dismissed with prejudice.

## ARGUMENT

### I.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 420-21 (5th Cir. 2006). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Id.*

A complaint, "on its face, must demonstrate that there exists plausibility for entitlement to relief." *Michael Clayton Enters. LLC v. Hossley*, No. 13-00537-BAJ-RLB, 2014 WL 4699495, at *3 (M.D. La. Sept. 19, 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). In determining plausibility, "a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim." *Id.*

## II.    THE SAC FAILS TO STATE A SHERMAN ACT CLAIM AGAINST BAIRD

Dismissal of a Sherman Act Section 1 claim is proper where plaintiffs proffer "[a] naked allegation of conspiracy or agreement, without more specific factual allegations." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007). To state a claim for relief, Plaintiffs must allege facts plausibly suggesting that Baird engaged in "concerted action" designed to harm competition, *i.e.*, conduct demonstrating "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Golden Bridge Tech., Inc. v. Motorola, Inc*., 547 F.3d 266, 271 (5th Cir. 2008) (citing *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)). An antitrust conspiracy may be pled through either direct or circumstantial evidence. *Id*. "Direct evidence explicitly refers to an understanding between the alleged conspirators, while circumstantial evidence requires additional inferences in order to support a conspiracy claim." *Id*.

Plaintiff bears the burden of alleging facts sufficient to support a plausible inference that each of the Defendants "in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective." *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 478 (S.D.N.Y. 2017) (quoting *AD/SAT, a Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999)) (emphasis added). Plaintiff must allege "specifics with respect to the acts of [each] particular defendant." *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 491-92 (D. Conn. 2008). "Mere generalizations as to any particular defendant—or even defendants as a group—are insufficient." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016). Accordingly, a complaint that describes a conspiracy in "general terms without any specification of any particular activities by any particular defendant" is "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-

3

51 (2d Cir. 2007); *see also Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285 (5th

Cir. 2006) (rejecting group pleading in securities cases). The SAC does not satisfy these basic

pleading requirements. Instead, with respect to Baird, the most that Plaintiff can point to are

generalized allegations directed at "Defendants" as an undifferentiated whole. These are plainly

insufficient to state a claim for relief against Baird.

Here, no specific facts are alleged—direct or circumstantial—that plausibly suggest

Baird's participation in the alleged price-fixing conspiracy.

### A.    Plaintiff Fails to Allege that Baird Participated in the Alleged Conspiracy

The SAC alleges that between 2009 and 2016, certain GSE Bond Dealers fixed the prices

of GSE Bonds in the secondary market. SAC ¶ 5. The only purported "direct evidence" of this

alleged price-fixing agreement that is alleged in the SAC are chat transcripts of some GSE Bond

Dealers in multibank chatrooms allegedly setting prices in the secondary market. *Id*. at ¶¶ 5, 8,

148-155, 157-184. Although it includes new allegations regarding certain defendants, Plaintiff's

SAC, like the two previous versions of the Complaint, ***does not allege that Baird participated in***

***or was even mentioned in any "chats" among GSE dealers that are the alleged basis of the***

***purported antitrust conspiracy***. *See*, *e.g*., *id*. at ¶ 6 (omitting Baird from the list of Defendants

"directly implicated in conspiratorial multi-bank chats"). Nor does the SAC allege that Baird

otherwise communicated with other GSE Bond Dealers about pricing for any GSE Bonds sold in

the secondary market.

There are no other allegations in the SAC implicating Baird in the alleged antitrust

conspiracy. And the only other allegations specific to Baird are: (1) that Wisconsin is its state of

incorporation and its principal place of business (*id*. ¶ 92); (2) that it is a registered broker-dealer

licensed to do business in all 50 states (*id*. ¶ 92); (3) that it is an approved dealer of debt

4

securities issued by the GSEs (*id*. ¶¶ 93, 108); (4) that it transacted in GSE Bonds with Plaintiff. (*id*. ¶¶ 94-95, 267); and (5) that it made statements on its website about its skill and experience in the financial services industry.  *Id*. ¶ 283.  Thus, the most that can be said of Baird as it relates to Plaintiff's antitrust claim is that it transacted in bonds with Louisiana, and that it was licensed and approved to trade those bonds.  That Baird sold GSE Bonds to Louisiana is obviously not a sufficient basis to infer that Baird participated in a multi-year price-fixing conspiracy.

The paucity of allegations about Baird is not surprising given that the SAC was copied nearly verbatim from the Third Consolidated Amended Class Action Complaint in *In re GSE Bonds Antitrust Litigation*, Case No. 19-cv-1704, Dkt. 254 (S.D.N.Y. Sept. 10, 2019) ("*In re GSE Bonds*"), a putative class action filed in the United States District Court for the Southern District of New York which has now been completely resolved through settlement in which ***Baird was not a defendant***.  Through two rounds of motions of dismiss briefing in that case, Judge Rakoff determined that the only actionable allegations of an antitrust price-fixing conspiracy consisted of chatroom transcripts in which traders employed by only certain of the defendants in that case—not Baird—allegedly discussed the initial pricing of bonds at the outset of the FTT period.  *In re GSE Bonds Antitrust Litig*., 396 F. Supp. 3d 354, 363 (S.D.N.Y. 2019) ("*GSE I*"); *In re GSE Bonds Antitrust Litig*., No. 19-CV-1704 (JSR), 2019 WL 5791793 (S.D.N.Y. Oct. 15, 2019).  Judge Rakoff dismissed claims against defendants that were not alleged have participated in the "chats" because Plaintiffs failed to allege "something in the complaint that ties each [of those] defendant[s] to the conspiracy." *GSE I*, 396 F. Supp. 3d at 364; *see also id*. at 363 ("[e]ach defendant is entitled to know how he is alleged to have conspired, with whom and for what purpose") (internal quotation marks and citation omitted).  Baird should be dismissed from this action for the same reasons—it is not identified in any of the

"chats" alleged in the SAC and was conspicuously omitted from the list of defendants that Plaintiff asserts were "directly implicated in conspiratorial multi-bank chats regarding pricing in the secondary market for GSE Bonds" contained in the SAC. SAC ¶ 6.

Facts in the SAC concerning other defendants do not make plausible Plaintiff's claims against Baird.  As courts routinely hold, a complaint that lacks any substantive allegations against a particular defendant cannot survive a motion to dismiss.  *See Craig v. Our Lady of the Lake Regional Med. Ctr*., No. 15-cv-00814, 2017 WL 1113330, at *2 (M.D. La. Mar. 23, 2017) (dismissing claims against defendant where complaint merely alleged that defendant was a "department" of co-defendant and nothing else); *see also Vaughn v. First Nat'l Bank of Greenville, Miss*., 218 F.2d 804, 806 (5th Cir. 1955) (affirming dismissal of complaint where "no facts are, indeed not a single fact is, alleged which will support a claim of wrongdoing on [defendant's] part or show how anything that he did could have caused any of the damages or losses sued for"); *Paselk v. State*, No. 4:12-cv-754, 2013 WL 4791417, at *13 (E.D. Tex. Sept. 5, 2013) (dismissing claims where plaintiff "failed to plead any discernable or cognizable cause of action against" certain defendants and "lumped [them] in with various other parties" without alleging facts specific to them).

Plaintiff's counsel have conceded in other pleadings that the SAC does not state an antitrust claim other similarly situated defendants as to which there are no "chatroom" allegations; and the same logic compels the conclusion that it also has not stated antitrust claims against Baird.  In *City of Baton Rouge et al. v. Bank of America, N.A*., et al., 3:19-cv-00725 (Md. La.) ("*Baton Rouge*"), another case before this Court involving largely identical conspiracy allegations against banks for the alleged manipulation of GSE Bond prices, the plaintiffs—who are represented by the same counsel as Plaintiff here—are also asserting a violation of Section 1

of the Shearman Act against "all defendants."  *See* Second Amended Complaint for Damages

Pursuant to the Sherman Antitrust Act, the Louisiana Unfair Trade Practices Act and for

Professional Negligence, *Baton Rouge* Dkt. 134 at 97.[1]  Capital One, a defendant in *Baton*

*Rouge*, moved to dismiss the antitrust claim against it on the grounds that, like Baird, there are

no allegations connecting Capital One to the alleged conspiratorial chats or any other evidence

that it participated in the alleged conspiracy.  *See* Memorandum of Law in Support of Defendant

Capital One Bank's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), *Baton Rouge* Dkt.

124-1 at 7.  In response, the plaintiffs' counsel—the same attorneys who represent Plaintiff in

this action—conceded that the *Baton Rouge* complaint "does not attempt to articulate a Sherman

Act claim against Capital One."  *See* Plaintiffs' Memorandum of Law in Support of Response in

Opposition to Defendant Capital One's Motion to Dismiss, *Baton Rouge* Dkt. 139-1 at 4.

Counsel explained their reasoning as follows:

> As it can clearly be noted from the complaint, all of the other Defendants have
> been identified as active participants in the "chat room conspiracy", and excerpts
> of those conversations wherein prices were discussed in violation of the Sherman
> Act occurred. In addition to these chat room defendants there is a second group:
> those brokers who misled the Plaintiffs into purchasing these securities by making
> false statements about their use of skill and expertise in purchasing securities.
> These Defendants include the movant, Capital One.  Therefore the Motion to
> Dismiss on this count appears to be addressed to a claim not made and should be
> denied as moot.

*Id*. at 4-5.  Applying that same logic here, Baird should be dismissed from this case because it is

not alleged to be among the defendants "identified as active participants in the 'chat room

conspiracy' …wherein prices were discussed in violation of the Sherman Act," and therefore

Plaintiff has failed to articulate a Sherman Act claim against Baird.

---

[1] Baird was not named as a defendant in *Baton Rouge* or a similar action brought on behalf of the Louisiana Asset Management Pool currently pending in the Eastern District of Louisiana.  *Louisiana Asset Management Pool v. Bank of America Corporation*, et al., 20-cv-1095 (E.D. La.) (GGG)(DMD).

**B.    Plaintiff's Impermissible Group Pleading Fails to State a Claim Against Baird**

"Post-*Twombly* authorities overwhelmingly hold that a complaint that provides no basis to infer the culpability of the specific defendants named in the complaint fails to state a claim." *In re Mexican Gov't Bonds Antitrust Litig*., No. 18-cv-2830 (JPO), 2019 WL 4805854, at *7 (S.D.N.Y. Sept. 30, 2019) (dismissing antitrust claims). Allegations that are asserted against defendants "as a general collective bloc, or generalized claims of parallel conduct must . . . be set aside . . . as impermissible group pleading." *Id*. at *6 (quoting *In re Interest Rate Swaps Antitrust Litig*., No. 16-MD-2704, 2018 WL 2332069, at *15 (S.D.N.Y. 2018)); *see also In re Zinc*, 155 F. Supp. 3d at 384 (dismissing claims because plaintiffs had "resort[ed] to . . . group pleading" and stating that "Plaintiffs must be able to separately state a claim against each and every defendant joined in this lawsuit").

The minimal allegations specific to Baird—i.e., listing purchases of GSE Bonds from Baird along with other defendants—do not come close to stating a claim under the Sherman Act. Plaintiff's antitrust claim against Baird should be dismissed just as Judge Rakoff dismissed identical claims against defendants who were not alleged to have participated in the conspiracy to fix prices of GSE Bonds. *See GSE I*, 396 F. Supp. 3d at 364.

**C.    The Statistical Analysis Alleged in the Amended Complaint Does Not Show Baird's Involvement in the Alleged Conspiracy**

The statistical analyses Plaintiff offers in an attempt to show the impact of the alleged conspiracy on GSE bond prices (e.g., SAC ¶ 209) are irrelevant because, even assuming that the statistics are accurate (and there is no indication that they are), the results say nothing about whether any particular defendant—and Baird specifically—participated in the alleged conspiracy. Addressing substantially similar allegations, Judge Rakoff held that allegations based on statistical analyses regarding prices "do not plausibly suggest that the particular

defendants named . . . were part of that conspiracy." *GSE I*, 396 F. Supp. 3d at 365. Thus, the statistics provide no basis for inferring that Baird participated in the alleged conspiracy because "[e]ven assuming that the price-fixing conspiracy extended beyond the banks appearing in the chatroom logs, there is no particular reason to believe that [Baird was] involved apart from plaintiffs' say-so." *Id*.

**D.    Plaintiff Does Not Allege Baird's Participation in the Alleged Conspiracy Through Parallel Conduct and Plus Factors**

Plaintiff makes no attempt to plead facts suggesting that Baird engaged in parallel conduct, let alone parallel conduct suggesting a conspiracy to fix secondary-market prices of any GSE Bonds. To plead parallel conduct, Plaintiff would have to show that each defendant behaved in the same way with respect to the GSE Bonds during the alleged conspiracy period. *See*, *e.g.*, *Alaska Elec. Pension Fund v. Bank of Am. Corp*., 175 F. Supp. 3d 44, 54 (S.D.N.Y. 2016) (alleging multi-year period when each defendant made ISDA fix submissions reflecting "exact same bid/ask spread" nearly every day); *In re Currency Conversion Fee Antitrust Litig*., 773 F. Supp. 2d 351, 367-73 (S.D.N.Y. 2011) (alleging multi-year period when each defendant implemented same foreign-currency conversion fee). Here, the SAC pleads no factual allegations about uniform and consistent pricing of GSE Bonds by Baird.

And even if the SAC did allege parallel conduct, Plaintiff's claims against Baird would still fail for the additional reason that Plaintiff pleads no "plus factors." Because parallel conduct can be consistent with pro-competitive and non-conspiratorial conduct, in order to state a viable antitrust conspiracy claim based on circumstantial evidence, a plaintiff must also allege additional facts and circumstances—referred to as "plus factors"—to create a plausible inference that any alleged parallel conduct "flowed from a preceding agreement." *Mayor & City Council of Balt., Md. v. Citigroup, Inc*., 709 F.3d 129, 137-38 (2d Cir. 2013). "Plus factors" that may

support a plausible inference of conspiracy include: "(1) a common motive to conspire; (2) evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators; and (3) evidence of a high level of interfirm communications." *In re Interest Rate Swaps*, 261 F. Supp. 3d at 463. Plaintiff pleads no such facts as to Baird, and its antitrust claim against Baird therefore fails as a matter of law and should be dismissed accordingly.

## III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BAIRD UNDER LOUISIANA LAW

### A. Plaintiff Fails to State a Claim for Negligence Against Baird

To state a claim for negligence under Louisiana law, a plaintiff must allege that "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Lemann v. Essen Lane Daiquiris, Inc*., 2005-1095 (La. 3/10/06); 923 So. 2d 627, 633. Because Plaintiff has failed to plead facts sufficient to establish any of these requisite elements, its negligence claim should be dismissed.

#### 1. Plaintiff Has Failed to Establish that Baird Owed Louisiana Any Legally Cognizable Duty

A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty of care. *Meany v. Meany,* 94-0251 (La. 7/5/94), 639 So. 2d 229, 233. Here, Plaintiff baldly asserts that Baird and other defendants "owed a duty of care to their customers, including the State of Louisiana" and posits—without a single factual supporting allegation—that Baird and

10

other defendants had "a duty to ensure that the investments that they offered or brokered were suitable for the State of Louisiana as a client, and a duty to use reasonable care in recommending investments to the State of Louisiana." SAC ¶ 279. But Plaintiff cannot invent a duty out of thin air. There must be some statutory, regulatory, contractual or other obligation giving rise to such a duty (*Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La. 1993)), and none is pled here.

Although Plaintiff alleges that it entered into contracts with Baird to purchase GSE Bonds (SAC ¶ 277), it does not identify any such contracts, let alone any contractual provisions under which Baird provided "investment advice" to Plaintiff or that would give rise to a purported duty to offer "suitable" investments. *Id*. ¶ 279. *See, e.g.*, *Satterfeal v. LoanCare, LLC*, No. 3:18-1021-JWD-EWD, 2019 WL 5777379, *4 (M.D. La. Nov. 5, 2019) (dismissing negligence claim where plaintiffs "failed to allege sufficient facts to show that [defendant] specifically owed them a duty of care"); *see also D & J Tire, Inc. v. Bank One, La., Nat'l Ass'n*, 2002-0935 (La. App. 3 Cir. 2/5/03), 838 So. 2d 112, 114 (trial court erred in finding liability for negligent misrepresentation absent a contractual relationship giving rise to a duty of care).[2] This Court has already recognized that Louisiana law forecloses a plaintiff from imputing duties into a contract. *Grodner & Assocs., APLLC v. Regions Bank*, 338 F. Supp. 3d 488, 502 (M.D. La.

---

[2] Indeed, it is hornbook law that, absent the grant of discretionary authority over an account (which Plaintiff does not claim occurred here), financial brokers like Baird owe only limited duties to their customers, such as a duty to execute a requested transaction. *See, e.g.*, *De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1306 (2d Cir. 2002) ("We are aware of no authority for the view that, in the ordinary case, a broker may be held to an open-ended duty of reasonable care, to a nondiscretionary client, that would encompass anything more than limited transaction-by-transaction duties."); *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940-41 (2d Cir. 1998) (in a nondiscretionary account, "the broker's duties are quite limited," including only the duty to obtain client's authorization before making trades and to execute requested trades); *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 412 (5th Cir. 1998) (holding that "where the investor controls a nondiscretionary account and retains the ability to make investment decisions, the scope of any duties owed by the broker will generally be confined to executing the investor's order").

2018) (Dick, J.), *aff'd sub nom. Grodner & Assocs. v. Regions Bank*, 766 F. App'x 12 (5th Cir. 2019).

Dealings with financial institutions "are generally considered to be arm's length transactions which do not impose any independent duty of care." *Guimmo v. Albarado*, 99-286 (La. App. 5 Cir. 7/27/99), 739 So. 2d 973, 975.  In fact, La. Stat. Ann. § 6:1124 makes clear that a financial institution like Baird does not have a fiduciary duty to a customer absent a written agreement in which Baird specifically agreed "to act and perform in the capacity of a fiduciary." La. Stat. Ann. § 6:1124 ("No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.").  Here, the only allegations about the relationship between Baird and Louisiana pled in the SAC are that Baird bought and sold GSE Bonds in transactions with Louisiana.  Because there are no factual allegations to suggest anything other than that Baird was a counterparty of Louisiana in arms-length GSE Bond transactions, Plaintiff has failed to plead a cognizable duty of care and its negligence claim against Baird should be dismissed.  *See Bluebonnet Hotel Ventures, L.L.C. v. Wachovia Bank, N.A.,* No. CV 10-489-JJB-DLD, 2011 WL 13074300, at *10 (M.D. La. Sept. 29, 2011) ("No factual allegations point to anything other than an ordinary bank-client relationship, and as such Bluebonnet fails to state a claim for negligence.").

        **2.**      **There Are No Allegations Sufficient to Show That Baird Breached Any Alleged Duty**

Even if Plaintiff had sufficiently pled a cognizable duty (which it has not), the SAC also fails to plead any facts sufficient to show that any such duty was breached. Plaintiff asserts,

without factual basis, that Baird breached a duty of care by "selling agency securities to the State of Louisiana which were in fact the subject of a fraud or scam; i.e., the unlawful price fixing scheme of the remaining 'chat room' defendants." SAC ¶ 286. Plaintiff further alleges that Baird knew or should have known that the prices of GSE bonds were artificially inflated, based on its skill and experience as a broker. *Id*. ¶ 287. But the SAC does not any allege facts suggesting that Baird actually knew about or could reasonably have discovered the existence of the alleged conspiracy ***when there are no facts alleged suggesting that Baird participated in the alleged chatroom communications or otherwise had such knowledge***.

To the contrary, Plaintiff's own allegations undermine this unsupported assertion. According to Plaintiff, the "conspiracy was inherently self-concealing because it relied on secrecy for its successful operation" (SAC ¶ 298), and Plaintiff "was not aware of Defendants' misconduct and could not have discovered it through the exercise of due diligence until June 2018, when the DOJ's price-fixing investigation was revealed publicly for the first time." *Id*. ¶ 299. Absent any allegations showing that Baird knew or should have known about the alleged conspiracy (which there are none), and none showing that Baird participated in the alleged conspiracy (*see supra* at I.A.), the SAC provides no basis upon which to plausibly infer that Baird breached a fiduciary duty by failing to detect this "secret" chatroom conspiracy.

Nor does the SAC allege any facts to support Plaintiff's claim that the GSE Bonds at issue were not "suitable" investments for Louisiana. SAC ¶ 279. In fact, Plaintiff alleges exactly the opposite. Plaintiff alleges that the GSE Bonds at issue are of "high credit quality" (*id*. ¶¶ 20, 116), pay fixed rate returns (*id*. ¶ 121), and "[i]f held to maturity, they preserve their principal and offer certainty of cash flow." *Id*. Moreover, Plaintiff alleges that Louisiana's state statutes and investment policies limit the type of investments that Louisiana can make and that,

13

as a result of those restrictions, Louisiana has historically invested in GSE Bonds—the very instruments that Plaintiff baldly asserts were "unsuitable." *Id.* ¶ 1. Based on Plaintiff's own allegations, the only reasonable inference that can be drawn is that the GSE Bonds at issue ***were*** suitable investments. Thus, Plaintiff has failed sufficiently to plead the existence or breach of any invented duty of care.[3]

**B.    Plaintiff Has Failed to Plead a Violation of Louisiana's Unfair Trade Practices and Consumer Protection Act**

**1.    Baird is Exempt from Plaintiff's LUTPA Claim**

Plaintiff's LUTPA claim against Baird should be dismissed because it is barred by LUTPA's statutory exemption for financial institutions. LUTPA does not apply to "[a]ny federally insured financial institution, its subsidiaries, and affiliates ***or any licensee of the Office of Financial Institutions***, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of. . . federal banking regulators who possess authority to regulate unfair or deceptive trade practices." LA. STAT. ANN. § 51:1406(1) (emphasis added). "The purpose of this exemption is 'to avoid duplication and exclude financial institutions which are regulated by other authorities as to unfair or deceptive trade practices.'" *Mariche v. Wells Fargo Bank*, N.A., Civil Action No. 11–1191, 2012 WL 1057626, at *2 (E.D. La. Mar. 28, 2012) (citation omitted).

Baird qualifies for this exemption because it is a licensee of the Office of Financial Institutions. Plaintiff affirmatively alleges that "***Baird is a registered broker-dealer***" that is

---

[3] The SAC also fails to plead facts sufficient to establish the other required elements of Plaintiff's negligence claim. There are no allegations sufficient to show that Baird's alleged failure to detect the conspiracy—rather than the alleged conspiracy itself—was the cause-in-fact or legal cause of Plaintiff's injuries, or that Plaintiff suffered damages as a result of any negligence of Baird. *Cf. Fl. Gas Transmission Co., LLC v. Tex. Brine Co., LLC*, 2018-0907 (La. App. 1 Cir. 8/29/19), 282 So. 3d 256, 260 (rejecting negligence claim where defendant's "failure to detect and correct this error" did not cause alleged injury); *McNeely v. Ford Motor Co.*, 98-2139 (La. App. 1 Cir. 12/28/99), 763 So. 2d 659, 667 (holding that a defendant is not "liable for damages caused by separate, independent or intervening causes").

14

"*licensed to do business in all 50 states*."  SAC ¶ 92 (emphasis added).[4]  Moreover, it is

indisputable that the Louisiana Office of Financial Institutions is the agency responsible for

licensing and regulating all broker-dealers in this State, including Baird.[5]  Plaintiff's LUTPA

claim against Baird is therefore barred under Louisiana law and should be dismissed accordingly.

### 2.    The Complaint Fails to State a LUTPA Claim Against Baird

Plaintiff's LUTPA claim against Baird is inadequately pleaded for two reasons.  *First*,

Plaintiff does not plausibly allege that Baird engaged in any unfair or deceptive acts.  LUTPA

prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the

conduct of any trade or commerce." LA. REV. STAT. ANN. § 51:1405(A).  "'[T]he range of

prohibited practices under LUTPA is extremely narrow,' as LUTPA prohibits only fraud,

misrepresentation, and similar conduct, and not mere negligence." *Quality Envtl. Processes, Inc.*

*v. I.P. Petroleum Co.*, 2013-1582 (La. 5/7/14), 144 So. 3d 1011, 1025.  The SAC does not allege

that Baird engaged in any such conduct.

The crux of Plaintiff's LUTPA claim is that Baird and certain other defendants "engaged

in deceptive business practices regarding the advertisement of their brokerage services, including

making false statements regarding the use of their experience and skill in recommending

investments."  SAC ¶ 291.  Plaintiff, however, offers no factual allegations to support this

---

[4] *See also FINRA BrokerCheck Report:* Robert W. Baird & Co. Incorporated CRD# 8158, https://files.brokercheck.finra.org/firm/firm_8158.pdf (last visited July 20, 2020) (showing that Robert W. Baird & Co. Incorporated has been registered as a broker dealer in Louisiana since 9/24/1985).  The Court may take judicial notice of public records, including government websites, for the purpose of a Rule 12(b)(6) motion. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995) (holding that taking notice of public record documents is appropriate in a Rule 12(b)(6) motion); *Bombet v. Donovan*, No. 13-CV-118 (SDD), 2015 WL 65255, at *7-8 (M.D. La. Jan. 5, 2015) (Dick, C.J.) (taking judicial notice of website and corporate status).

[5] As stated on the Louisiana Office of Financial Institutions' official website, "*This division* registers securities offerings for sale to the public and *licenses broker-dealers*, agents, and investment advisers.  Working in close cooperation with the Financial Industry Regulatory Authority and the United States Securities and Exchange Commission, *this section also investigates and originates enforcement actions regarding unfair practices, complaints, and violations of law regarding a variety of securities activities*." *See* http://www.ofi.state.la.us/Securities%20Front.htm.

conclusory assertion and, instead, alleges only that Baird and certain other defendants
"undertook no effort at all to ascertain the suitability of their offered services, and took no
actions to ascertain the reason for the supra-competitive prices the Plaintiff ultimately paid for
the investments brokered by them." *Id*. ¶ 294.  Far from alleging fraud, misrepresentation, or
similar conduct, this is essentially a restatement of Plaintiff's negligence claim, which is
insufficient to state a claim under LUTPA.  *Quality Envtl. Processes*, 144 So. 3d at 1025
(allegations of "mere negligence" are insufficient to state a LUTPA claim); *see Lamarque v.
Mass. Indem. & Life Ins. Co*., No. 82-5029, 1986 WL 11895, at *1-2 (E.D. La. Oct. 22, 1986)
(Arceneaux, J.); *Pizzaloto v. Hoover Co*., 486 So. 2d 124, 128 (La. App. 5 Cir. 1986).  That
conclusory allegation is no more sufficient to sustain Plaintiff's LUTPA claim against Baird than
it is to support Plaintiff's negligence claim against Baird.

      Plaintiff's allegations concerning Baird's supposed "false advertising" claim is limited to
a few generic statements on Baird's website about its businesses.  SAC ¶ 283.  Plaintiff does not
allege with the requisite particularity how any of those website statements were fraudulent—nor
even that Plaintiff read and relied on those website statements in making its alleged purchases
from Baird.

      For example, Plaintiff cites to the following unremarkable statement from Baird's
website:

> As a workplace of choice for the financial industry, Baird has attracted top talent
> to serve clients of our private wealth management, asset management, fixed
> income sales and trading, public finance, investment banking, equity sales, trading
> and research and private equity businesses, including:
>
> - Seasoned senior leaders with an average 20-year tenure at Baird
> - Equity research analysts recognized among the best in our industry
> - Investment strategists and in-house financial planning specialists
>   frequently sought by national media for insight

- An international network of industry experts with firsthand experience and perspective in key global markets

*Id*. ¶ 283.  But Plaintiff fails to allege how any phrase in this statement is untrue, let alone fraudulent or deceptive.  The statement says nothing about the suitability of GSE Bonds as investments and Plaintiff does not allege that it read or relied on this statement prior to making any investment decisions.  Instead, Plaintiff merely claims that this statement *must have* been false and that Baird *must have* acted improperly because it failed to detect a secret conspiracy to manipulate GSE bond prices.  *Id*. ¶ 294.  As noted above, this unsupported supposition at most merely restates Plaintiff's negligence claim (*see id*. ¶¶ 279, 286-287), and plainly neither satisfies Rule 9(b)'s particularity requirements, nor rises to the level of "egregious" conduct actionable under LUTPA.  *See Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc*., 178 F. Supp. 3d 390, 406 (E.D. La. 2016) (dismissing LUTPA claim where "Plaintiff has not included enough details to determine whether the actions alleged are 'immoral, unethical, oppressive, unscrupulous, or substantially injurious' so as to give rise to a LUTPA claim"); *cf. Omnitech Int'l, Inc. v. Clorox Co*., 11 F.3d 1316, 1333 (5th Cir. 1994) (reversing district court's denial of motion for judgment as a matter of law on LUTPA claim in the absence of allegations of fraud).  The conclusory nature of Plaintiff's "false statement" allegations fails to meet the "heightened pleading requirements of Rule 9(b)" under LUTPA.  *Brand Coupon Network, LLC v. Catalina Mktg. Corp*., No. CIV.A. 11-00556-BAJ, 2014 WL 6674034, at *5 (M.D. La. Nov. 24, 2014).

*Second*, Plaintiff fails to plead that Baird acted with the specific intent to harm competition.  To state a claim under LUTPA, a "defendant's motivation is a critical factor—his actions must have been taken with the specific purpose of harming … competition." *Jeanes v. McBride*, No. 16-1259, 2019 WL 2387863, at *13 (W.D. La. June 4, 2019) (quoting *IberiaBank*

17

*v. Broussard*, 907 F.3d 826, 839-40 (5th Cir. 2018)); *see Monroe v. McDaniel*, 16-214 (La. App. 5 Cir. 12/7/16), 207 So. 3d 1172, 1180.  Here, Plaintiff has not even attempted to allege that Baird took any actions with the specific intent to harm competition.  Putting aside the fact that Baird and the State of Louisiana are clearly not competitors in the market for GSE Bonds, the SAC contains no facts whatsoever suggesting that Baird did anything with the specific purpose of harming competition generally or Plaintiff specifically.  Plaintiff's LUTPA claim should be dismissed accordingly.[6]

### 3.    The State is Not Entitled to Damages Under LUTPA

Plaintiff's effort to invoke Section 1408 of LUPTA to seek monetary "damages" (SAC ¶ 295) is improper.  *First*, that provision does not permit recovery of damages. *See* LA. REV. STAT. ANN. § 51:1408(A); *see also State v. Astra Zeneca AB*, 2016-1073 (La. App. 1 Cir. 4/11/18), 249 So. 3d 38, 45-46 ("LUTPA expressly gives the Attorney General the right to bring an action for injunctive relief (La. R.S. 51:1407A) and request civil penalties (La. R.S. 51:1407B) and restitution (La. R.S. 51:1408(5))") (citing *State v. Abbott Labs., Inc*., 2015-1626 (La. App. 1 Cir. 10/21/16), 208 So. 3d 384, 389).  Damages are only available in "private actions" brought pursuant to Section 1409 of the LUTPA (LA. REV. STAT. ANN. § 51:1409(A))—a provision that is not mentioned in the SAC. *See Camowraps, LLC v. Quantum Digital Ventures LLC*, Civil Action No. 13-6808, 2015 WL 2229280, at *2 (E.D. La. May 12, 2015) (distinguishing the remedies available to Louisiana and to private parties).  Thus, even if the LUTPA claim proceeds—and as explained above, it should not—Plaintiff is not entitled to seek damages.

---

[6] Because Plaintiff has failed through three rounds of briefing to plead any facts linking Baird to the alleged conspiracy or to otherwise substantiate its LUTPA claim against Baird, Baird believes that Plaintiff's LUTPA claim was brought in bad faith and for the purpose of harassment and that Baird is therefore entitled to recover reasonable attorney fees and costs from Plaintiff.  LA. REV. STAT. ANN. § 51:1409; *see also Bobby & Ray Williams P'ship v. The Shreveport La. Hayride Co*., 38, 224 (La. App. 2 Cir. 4/21/04), 873 So. 2d 739, 746 (upholding award of attorney fees where plaintiffs failed "to provide a reasonable basis for the allegations in their petition").

*Second*, even if Plaintiff had asserted a damages claim under section 1409, such a claim would still fail.  To recover damages, LUTPA requires that a plaintiff must have suffered an "ascertainable loss" caused "as a result" of the actions of "another person." *See* LA. REV. STAT. ANN. § 51:1409(A).  Louisiana courts interpreting LUTPA have thus required plaintiffs to allege an actual loss of money that was caused by defendants' actions.  *See*, *e.g.*, *Bolanos v. Madary*, 609 So. 2d 972, 977 (La. App. 4 Cir. 4/2/1993); *see also Bobby & Ray Williams P'ship*, 873 So. 2d 739, 746 (no cause of action under LUTPA in the absence of allegations of ascertainable loss).  General allegations of damage are insufficient.  *See*, *e.g.*, *Chemtreat, Inc. v. Andel*, No. Civ. A. 03-1917, 2003 WL 22466235, at *3 (E.D. La. Oct. 29, 2003) ("simply requesting damages is not enough to demonstrate" ascertainable loss).  Thus, Plaintiff is required not only to allege that it "suffer[ed] an ascertainable loss," but also that the loss resulted from "another's use of unfair methods of unfair methods of competition and unfair or deceptive acts or practices." *See NOLA 180 v. Treasure Chest Casino, LLC*, 11-853 (La. App. 5 Cir. 3/27/12), 91 So. 3d 446, 450.

Plaintiff fails to do that here.  In support of its LUTPA claim, Plaintiff alleges that it paid "higher than normal prices for fixed rate securities." SAC ¶ 293.  But Plaintiff affirmatively alleges elsewhere in the SAC that this alleged loss was caused by the alleged antitrust conspiracy in which, as set forth above, Baird is not alleged to have participated.  Plaintiff's ascertainable loss, if any, was the result of the antitrust conspiracy, not the fact that it may have purchased bonds from Baird, a non-conspirator, or any supposedly "deceptive" representations concerning Baird's investment experience and services.  Thus, even if damages were an available remedy, Plaintiff has not adequately pleaded a damages claim under LUTPA because it fails to plead that the alleged "unfair methods of competition and unfair or deceptive act[] or practice[]" actually

caused the alleged harm it asserts. *See NOLA 180*, 91 So. 3d at 449-50 (setting forth a "two-prong test" for determining whether a plaintiff can "sustain a cause of action under LUTPA").[7]

## CONCLUSION

The State of Louisiana's entire case against Baird boils down to an unsupported theory that, because some GSE bond traders allegedly engaged in conspiratorial conduct, therefore all GSE bond traders who did business with the State of Louisiana must have done so. "Guilt by association" has never sufficed to support antitrust or the other claims asserted in this case and it likewise is insufficient to sustain Plaintiff's claims here.

For the foregoing reasons, pursuant to Rule 12(b)(6), the Court should dismiss with prejudice Plaintiff's SAC in its entirety against Baird for failure to state a claim upon which relief can be granted. Because Plaintiff has already amended once as of right and a second time by this court's leave, dismissal should be with prejudice.

---

[7] Plaintiff also lacks standing to assert a LUTPA claim. "LUTPA's private right of action is limited to direct consumers or to business competitors." *Tubos de Acero de Mexico, S.A. v. Am. Int'l. Inv. Corp*., 292 F.3d 471, 480 (5th Cir. 2002) (citing *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc*., 220 F.3d 396, 404 (5th Cir. 2000)). Under LUTPA, a "consumer transaction" is a "transaction involving trade or commerce to a natural person, the subject of which is primarily intended for personal, family, or household use." LA. REV. STAT. ANN. § 51:1402(3) (emphasis added). The transactions at issue are self-evidently not "consumer transactions" as the State of Louisiana is not a natural person and the GSE Bonds were not intended for personal, family, or household use. *See Orthopedic & Sports Injury Clinic v. Wang*, 922 F.2d 220, 225-26 (5th Cir. 1991) (limiting the applicability of LUTPA to non-commercial transactions involving natural persons). Nor is the State of Louisiana a "business competitor" of Baird, which Plaintiff alleges is a broker-dealer. Where, as here, "plaintiffs are not in competition with the defendants, it appears that most courts treat the claim as a breach of contract claim, which is not actionable under LUTPA." *Landreneau v. Fleet Fin. Group*, 197 F. Supp. 2d 551, 557 (M.D. La. 2002) (dismissing consumers' LUTPA claim against credit card company for lack of competitive harm).

In *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc*., 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1056-58, a plurality of three of the seven members of the Louisiana Supreme Court stated their view that standing under LUTPA is not limited to business competitors and consumer transactions. Several Louisiana appellate courts and federal district courts have elected to follow the plurality opinion in *Cheramie*, even though it is non-binding precedent. *See Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co*., No. CV 17-0200, 2018 WL 2209165 at *6 (citing cases) (W.D. La. May 11, 2018), *aff'd*, 781 F. App'x 289 (5th Cir. 2019). The Fifth Circuit, however, has not yet adopted the reasoning of the *Cheramie* plurality or reversed its prior holdings limiting LUTPA standing, which remain binding on this Court. *See, e.g., Baba Lodging, LLC v. Wyndham Worldwide Operations, Inc*., CIVIL ACTION 10-1750, 2012 WL 13041532, at *4-5 (W.D. La. March 19, 2012) (dismissing LUTPA claim on standing grounds per binding Fifth Circuit precedent "in the absence of a majority opinion of the Louisiana Supreme Court definitively interpreting standing under LUPTA").

Dated: July 27, 2020                          Respectfully submitted,

                                              */s/ Lynne M. Powers*
                                              Lynne M. Powers (La. Bar No. 37516)
                                              MORGAN, LEWIS & BOCKIUS LLP
                                              1000 Louisiana Street, Suite 4000
                                              Houston, TX 77002-5005
                                              Telephone: (713) 890-5000
                                              Facsimile: (713) 890-5001
                                              lynne.powers@morganlewis.com

                                              J. Clayton Everett, Jr. (*pro hac vice*)
                                              Anthony R. Van Vuren (*pro hac vice*)
                                              MORGAN, LEWIS & BOCKIUS LLP
                                              1111 Pennsylvania Ave. NW
                                              Washington, DC 20004
                                              Telephone: (202) 739-3000
                                              Facsimile: (202) 739-3001
                                              clay.everett@morganlewis.com
                                              anthony.vanvuren@morganlewis.com

                                              ***Attorneys for Defendant Robert W. Baird & Co.
                                              Incorporated***

## **CERTIFICATE OF SERVICE**

I certify that on July 27, 2020, I served the foregoing on all counsel of record by filing the pleading with the court's electronic court filing (ECF) system, which automatically notifies all counsel of record.

/s/ Lynne M. Powers
Lynne M. Powers