UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STATE OF LOUISIANA, | * | |
| By and through its Attorney General, | * | |
| JEFF LANDRY | * | |
| | * | CIVIL ACTION NO. 3:19-cv-00638 |
| Plaintiff, | * | |
| | * | JUDGE SHELLY D. DICK |
| | * | |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE |
| BANK OF AMERICA, N.A., et al., | * | RICHARD L. BOURGEOIS, JR. |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF MIZUHO SECURITIES USA LLC'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 1

BACKGROUND ........................................................................................................... 3

ARGUMENT ................................................................................................................. 5

I.      Plaintiff Fails To Plead Direct or Circumstantial Evidence That Mizuho
        Participated in the Alleged Conspiracy........................................................... 6

        A.      Plaintiff Does Not Allege Any Direct Evidence of Mizuho's Participation
                in the Alleged Conspiracy.................................................................... 7

        B.      Plaintiff Does Not Allege Any Circumstantial Evidence That Mizuho
                Participated in the Alleged Conspiracy............................................... 11

        C.      Allegations About Other Entities Are Insufficient To State a Claim
                Against Mizuho.................................................................................... 13

II.     Plaintiff Fails To State a Claim Under LUTPA Against Mizuho................... 14

III.    Plaintiff Fails To State a Claim for Negligence Against Mizuho.................. 16

CONCLUSION............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AD/SAT, a Div. of Skylight, Inc. v. Associated Press*,
181 F.3d 216 (2d Cir. 1999)................................................................................6

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
175 F. Supp. 3d 44 (S.D.N.Y. 2016).................................................................11

*In re Beef Indus. Antitrust Litig.*,
907 F.2d 510 (5th Cir. 1990) ............................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................5

*Benchmark Elec. Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) ............................................................................16

*Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*,
2009-1633 (La. 4/23/10), 35 So. 3d 1053 ........................................................15

*Brand Coupon Network, LLC v. Catalina Mktg. Corp.*,
No. 11 Civ. 556, 2014 WL 6674034 (M.D. La. Nov. 24, 2014) ......................15

*In re Commodity Exch., Inc.*,
213 F. Supp. 3d 631 (S.D.N.Y. 2016)...............................................................13

*Council of Balt. v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013)..............................................................................11

*Craig v. Our Lady of the Lake Reg'l Med. Ctr.*,
No. 15 Civ. 814, 2017 WL 1113326 (M.D. La. Mar. 23, 2017)........................5

*In re Currency Conversion Fee Antitrust Litig.*,
773 F. Supp. 2d 351 (S.D.N.Y. 2011)...............................................................11

*Davis v. Bayless*,
70 F.3d 367 (5th Cir. 1995) ..............................................................................15

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007).................................................................................6

*Ferguson v. Extraco Mortg. Co.*,
264 F. App'x 351 (5th Cir. 2007) .......................................................................1

*Fin. Acquisition Partners LP v. Blackwell*,
    440 F.3d 278 (5th Cir. 2006) ............................................................6

*First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*,
    178 F. Supp. 3d 390 (E.D. La. 2016) ...............................................16

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
    547 F.3d 266 (5th Cir. 2008) ........................................................5, 6

*Grodner & Assocs., APLLC v. Regions Bank*,
    338 F. Supp. 3d 488 (M.D. La. 2018) (Dick, J.),
    *aff'd*, 766 F. App'x 12 (5th Cir. 2019) ............................................17

*In re GSE Bonds Antitrust Litig.*,
    396 F. Supp. 3d 354 (S.D.N.Y. 2019) ..............................................12

*Guimmo v. Albarado*,
    99-286 (La. App. 5 Cir. 7/27/99), 739 So. 2d 973 ...........................17

*Hyland v. HomeServices of Am., Inc.*,
    771 F.3d 310 (6th Cir. 2014) .............................................................7

*In re Interest Rate Swaps Antitrust Litig.*,
    261 F. Supp. 3d 430 (S.D.N.Y. 2017) .....................................6, 11, 13

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
    768 F. Supp. 2d 961 (N.D. Iowa 2011) ............................................10

*Lemann v. Essen Lane Daiquiris, Inc.*,
    2005-1095 (La. 3/10/06), 923 So. 2d 627 ........................................17

*Mariche v. Wells Fargo Bank, N.A.*,
    No. 11 Civ. 1191, 2012 WL 1057626 (E.D. La. Mar. 28, 2012) ...........14

*Marucci Sports, LLC v. NCAA*,
    751 F.3d 368 (5th Cir. 2014) ...........................................................10

*In re Mexican Gov't Bonds Antitrust Litig.*,
    412 F. Supp. 3d 380 (S.D.N.Y. 2019) ..............................................13

*Michael Clayton Enters. LLC v. Hossley*,
    No. 13 Civ. 537, 2014 WL 4699495 (M.D. La. Sept. 19, 2014) ...........5

*In re Optical Disk Drive Antitrust Litig.*,
    No. 10 MD 2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ...........10

*In re Parcel Tanker Shipping Servs. Antitrust Litig.*,
    541 F. Supp. 2d 487 (D. Conn. 2008) ................................................6

*Pinero v. Jackson Hewitt Tax Serv. Inc.*,
    594 F. Supp. 2d 710 (E.D. La. 2009) ...................................................................15

*In re Platinum & Palladium Antitrust Litig.*,
    No. 14 Civ. 9391, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ...........................13

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
    158 F. Supp. 3d 544 (E.D. La. 2016) ...............................................................7, 8

*Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*,
    2013-1582 (La. 5/7/14), 144 So. 3d 1011 ............................................................15

*Truong v. Bank of Am., N.A.*,
    717 F.3d 377 (5th Cir. 2013) ...............................................................................14

*Turner v. Purina Mills, Inc.*,
    989 F.2d 1419 (5th Cir. 1993) .............................................................................16

*Viazis v. Am. Ass'n of Orthodontists*,
    314 F.3d 758 (5th Cir. 2002) .................................................................................7

*In re Zinc Antitrust Litig.*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016) ................................................................13

**Statutes**

La. Rev. Stat. § 6:1124 ..............................................................................................18

La. Rev. Stat. § 51:1405(A) ......................................................................................15

La. Stat. Ann. § 51:1406(1) .......................................................................................14

**Other Authorities**

Fed. R. Civ. P. 8 ...................................................................................................5, 16

Fed. R. Civ. P. 9(b) ...........................................................................................2, 15, 16

Fed. R. Civ. P. 12(b)(6) ......................................................................................5, 15, 19

## INTRODUCTION

Defendant Mizuho Securities USA LLC ("Mizuho") hereby submits this memorandum of

law in support of its motion to dismiss the claims asserted against it in the Second Amended

Complaint for Damages (R. Doc. 130) (the "SAC") by the Plaintiff State of Louisiana

("Plaintiff").

## SUMMARY OF THE ARGUMENT

The SAC, like the two complaints Plaintiff previously filed in this action, copies largely

verbatim from a complaint filed in the Southern District of New York, which does *not* name

Mizuho as a defendant and does *not* allege that Mizuho engaged in any wrongdoing.  *In re GSE*

*Bonds Antitrust Litig.*, Case No. 19 Civ. 1704, (S.D.N.Y. Sept. 10, 2019) (R. Doc. 254) (the

"New York Action").[1]  Despite its multiple amendments purportedly responding to defendants'

prior motions to dismiss, Plaintiff has continued to fail to assert substantive allegations that show

*Mizuho's involvement* in the alleged wrongdoing.  Indeed, the core of the allegations in the SAC

are that "the largest underwriters in the primary market involved in the process that GSEs use to

issue debt . . . and the largest dealers of GSE Bonds to investors in the secondary market"

"agreed to inflate and/or maintain artificial prices for GSE Bonds throughout the Time period

between 2009 and 2016."  (SAC ¶¶ 4, 6.)  However, Mizuho is not alleged to be one of the

largest underwriters or dealers of GSE bonds and the SAC fails to allege Mizuho participated in

any conspiracy, let alone that it did so for a seven-year time period.

---

[1] A copy of the Third Consolidated Amended Class Action Complaint in the New York Action is
attached as Exhibit A (the "NY Cmpl.").  The Court may take judicial notice of this publicly
filed pleading.  *See Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) ("A
court may take judicial notice of 'a document filed in another court . . . to establish the fact of
such litigation and related filings . . . .'" (citation omitted)).

Plaintiff's Sherman Act claim should be dismissed because the SAC lacks factual allegations sufficient to show Mizuho's involvement in any alleged conspiracy. Plaintiff added in the SAC excerpts of a chatroom communication between a trader affiliated with Mizuho and a trader affiliated with Stifel,[2] and a separate chatroom communication with traders affiliated with two other financial institutions. However, neither "chat" supports a finding that Mizuho participated in any alleged conspiracy because neither shows an agreement to fix the free to trade or "FTT" price of GSE bonds. Rather, both communications were during the syndication period, during which Plaintiff acknowledges financial institutions can and do legally communicate about pricing of GSE bonds, including through multi-bank chats. Accordingly, Plaintiff's Sherman Act claim fails yet again, and should be dismissed.

Plaintiff's LUTPA claim is similarly defective because, as a regulated financial institution, Mizuho is exempt from LUTPA. And, even if Plaintiff could assert a LUTPA claim against Mizuho, because Plaintiff's claim rests on allegations that Mizuho made misrepresentations concerning its experience and skill, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Plaintiff, however, does not allege with particularity any of the required elements of its LUTPA claim: there is no allegation regarding any misrepresentation by Mizuho, let alone when it was made, to whom it was made, or that Plaintiff relied on it.

Plaintiff's negligence claim also fails because it contains no allegations to show that Mizuho owed Plaintiff the requisite legally cognizable duty of care, and pleads no facts to show that Mizuho knew of or should have known about the alleged conspiracy. Given that the SAC is

---

[2] Like Mizuho, Stifel is not a named defendant in the New York Action and has moved to dismiss the SAC.

Plaintiff's third bite at the apple, and was filed after Plaintiff had been served with Mizuho's prior motion to dismiss, which identified in detail the numerous infirmities with Plaintiff's pleadings, as well as numerous motions to dismiss filed by other defendants named in this case, all claims against Mizuho should be dismissed with prejudice.

## BACKGROUND

Plaintiff continues to fail to assert any factual allegations to show, among other things, the extent of Mizuho's involvement in GSE bond underwriting or in secondary market trading of GSE bonds between 2009 and 2016, the prices Mizuho charged when selling GSE bonds to Plaintiff or anyone else, or that Mizuho had a dominant position in the sale of GSE bonds. Rather, the only factual allegations specific to Mizuho are that Mizuho is an investment bank (SAC ¶ 98), Plaintiff purchased GSE bonds in a transaction that Mizuho brokered (*id.* ¶¶ 267, 278), a trader affiliated with Mizuho participated in a chat in March 2012 with individuals allegedly affiliated with Citigroup and FTN Financial (*id.* ¶ 181), and a trader affiliated with Mizuho participated in a chat in June 2013 with an individual allegedly affiliated with Stifel (*id.* ¶ 183). Plaintiff does not allege that any of the bonds it purchased from Mizuho were purchased while the bonds were free to trade, as opposed to out of syndication. Nor does Plaintiff allege that any of the bonds it purchased from Mizuho were the subject of the two alleged chats involving Mizuho excerpted in the SAC.

Moreover, neither of the "chats" involving Mizuho reflect an agreement to fix the free to trade price of any GSE bonds and both took place during syndication, and before the bonds being discussed were free to trade. (*Id.* ¶¶ 181, 183.) Plaintiff expressly alleges that before GSE bonds are free to trade, financial institutions are legally allowed to work together in syndicates to price and place GSE bonds with buyers in the primary market. (*Id.* ¶ 130.) Crucially, as even Plaintiff acknowledges, institutions are legally permitted to communicate with each other during this

3

syndication phase, and frequently do so through multi-bank chatrooms.  (*Id.* ¶ 14 (alleging that "traders involved in GSE Bond syndicates of the Defendants *were allowed to participate in multi-bank chat rooms to discuss pricing*" (emphasis in original)).)

The allegations reciting the chat involving Stifel reflects a discussion between bond underwriters during the syndication period concerning the price at which they might purchase additional GSE bonds from the issuer and thus "upsize" their purchase.  (*Id.* ¶ 183.)  Plaintiff does not assert that discussions of this nature are inappropriate or even relate to the subject of the conspiracy it attempts to allege.  Similarly, the only other chat involving Mizuho referenced in the SAC relates to bonds still in syndication and contains no agreement to fix the free to trade price between the participants.  (*Id.* ¶ 181.)  Although the traders state that the bond is free to trade, there is no agreement among them to a free to trade price.

Nor do the allegations concerning analyses of the New York Action defendants' GSE pricing and other data implicate Mizuho in any purported price-fixing conspiracy.  Plaintiff copied those allegations from the New York Action and, thus, the "Defendants" to whom those allegations refer do not include Mizuho, which was not named as a defendant in the New York Action.  For example, as the allegations themselves make clear, any data that purportedly indicates that "Defendants" inflated GSE bond prices during the relevant period do not, by definition, reflect an analysis of Mizuho's pricing and thus, cannot support a claim against Mizuho.  (*Compare* SAC ¶¶ 215-17 *with* Ex. A, NY Cmpl. ¶¶ 210-13.)  Indeed, Plaintiff relies on an analysis of GSE bond prices from the New York Action that compares prices charged by GSE bond dealers named as defendants in the New York Complaint and those *not* named in the New York Complaint.  (SAC ¶¶ 227-28; *see* Ex. A, NY Cmpl. ¶¶ 223-24 & Figure 4.)  Because Mizuho was not a defendant in the New York Action, that analysis shows, if anything, that

Mizuho's pricing was *below* that charged by the named defendants in the New York Action, and thus provides no basis for a claim against Mizuho.

Additionally, because Plaintiff acknowledges that Mizuho is a regulated financial institution, it is exempt from LUPTA.  Even if LUTPA were to apply, Plaintiff does not allege any specific statements made by Mizuho about GSE bonds that were false, when they were made, to whom they were made, or that Plaintiff relied on any specific statement, rendering its LUTPA claim fatally infirm.  Furthermore, Plaintiff's negligence claim should also be dismissed because Plaintiff does not allege any agreement or other basis that would convert the alleged ordinary arm's-length financial transactions between Mizuho and Plaintiff into transactions in which Mizuho owed Plaintiff a duty of care.

## <u>ARGUMENT</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of a complaint against the legal standard set forth in Rule 8, which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Craig v. Our Lady of the Lake Reg'l Med. Ctr.*, No. 15-00814, 2017 WL 1113326, at *2 (M.D. La. Mar. 23, 2017).  A complaint, "on its face, must demonstrate that there exists plausibility for entitlement to relief." *Michael Clayton Enters. LLC v. Hossley*, No. 13 Civ. 537, 2014 WL 4699495, at *3 (M.D. La. Sept. 19, 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  In determining plausibility, "a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim."  *Id*.  Plaintiff's claims against Mizuho all fail and should be dismissed because they are not adequately pleaded.

I.     **Plaintiff Fails To Plead Direct or Circumstantial Evidence That Mizuho Participated in the Alleged Conspiracy.**

To state a claim under the Sherman Act, Plaintiff would have to allege facts plausibly suggesting that Mizuho engaged in "concerted action" designed to harm competition, *i.e.*, conduct demonstrating "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008). An antitrust conspiracy may be pled through either direct or circumstantial evidence. *Id.* "Direct evidence explicitly refers to an understanding between the alleged conspirators, while circumstantial evidence requires additional inferences in order to support a conspiracy claim." *Id.* The SAC alleges neither.

Plaintiff cannot rely on general allegations about Defendants as a whole but instead must allege facts sufficient to support a plausible inference that *each* of the Defendants "in their individual capacities, consciously committed themselves to this common scheme designed to achieve an unlawful objective." *In re Interest Rate Swaps Antitrust Litig.* ("*In re IRS*"), 261 F. Supp. 3d 430, 478 (S.D.N.Y. 2017) (quoting *AD/SAT, a Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999)). Plaintiff must allege "specifics with respect to the acts of [each] particular defendant." *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 491-92 (D. Conn. 2008). Accordingly, a complaint that describes a conspiracy in "general terms without any specification of any particular activities by any particular defendant" is "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285 (5th Cir. 2006) (rejecting group pleading in securities cases). Here, Plaintiff's Sherman Act claim should be dismissed because no facts are alleged that could

support a finding that Mizuho consciously engaged in any anticompetitive agreement to fix prices for free to trade GSE bonds.

A.    **Plaintiff Does Not Allege Any Direct Evidence of Mizuho's Participation in the Alleged Conspiracy.**

The SAC fails to plead any direct evidence of Mizuho's involvement in the purported conspiracy. To qualify as direct evidence of a conspiracy, a communication must reflect an "explicit understanding between the [defendants] to collude." *Golden Bridge Tech.*, 547 F.3d at 272 (affirming grant of summary judgment in favor of defendants because plaintiff failed to establish "an explicit understanding to conspire"). "[D]irect evidence cannot be ambiguous; rather, '[d]irect evidence is tantamount to an acknowledgment of guilt.'" *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 158 F. Supp. 3d 544, 551 (E.D. La. 2016) (quoting *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 318 (6th Cir. 2014)). "Evidence of a conspiracy that depends on additional inferences is 'at most, circumstantial.'" *Id.* (quoting *Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 762 (5th Cir. 2002)). Here, Plaintiff relies on two excerpts of chats that involved individuals affiliated with Mizuho, but neither shows Mizuho conspired to fix the price of any free to trade GSE bonds.

As the SAC recognizes, banks are legally permitted to communicate about GSE bonds during syndication. (SAC ¶¶ 129-30 (GSE bond underwriters "often work[] together in a group called a 'syndicate' . . . [to] try and place [] new GSE Bonds with a bulk buyer" in what is referred to as the "'primary market'").) During the syndication phase, the banks are "permitted to communicate with each other to effectuate the initial placement in the primary market." (*Id.* ¶ 130.) The syndication phase ends only when the banks have "declare[d] the new issuance 'free-to-trade,'" at which point "secondary market trading begins." (*Id.* ¶ 131.) Here, neither of the

chats that Plaintiff excerpts shows an agreement to fix prices of free to trade GSE bonds, let alone that Mizuho agreed to do so for the multi-year period alleged in the SAC.

*First*, the chat between a trader affiliated with Mizuho and a trader affiliated with Stifel does not show that Mizuho agreed to fix prices for free to trade GSE bonds. That chat discusses the price at which the participants were willing to "upsize" the *syndication offering* by purchasing additional bonds from the GSE bond issuer:

> Stifel Nicolaus Trader:
> 99.00 FTT?
> [. . .]
>
> Mizuho Securities Trader:
> par less 1.00
>
> Stifel Nicolaus Trader:
> Cool
> [. . .]
>
> Stifel Nicolaus Trader:
> u wanna run an upsize cost?
>
> Mizuho Securities Trader:
> [. . .] ran one and got back 99.87 .. was gonna wait til it got back to 99.85
>
> Mizuho Securities Trader:
> You cool w/ that?
>
> Stifel Nicolaus Trader:
> yes
>
> Stifel Nicolaus Trader:
> i agree
>
> Mizuho Securities Trader:
> we should be closer now

(SAC ¶ 183; *see also* Stifel Mem. in Supp. of Mot. to Dismiss SAC (R. Doc. 145-1) at 9.) As Plaintiff concedes, banks can lawfully communicate regarding the price of GSE bonds while they

are in syndication.  (*See* SAC ¶ 130.)  Although the Stifel trader purportedly asked a question concerning "FTT," the chat clearly and unequivocally reflects that the bond was not yet free to trade, but instead, that Stifel and Mizuho were discussing upsizing the offering and the price at which they were willing to package and sell additional syndication bonds.  Accordingly, this chat does not show an agreement to fix prices for any free to trade GSE bonds and, thus, cannot support a finding of Mizuho's participation in the alleged conspiracy.[3]  *Cf. In re Pool Prods.*, 158 F. Supp. 3d at 551 (rejecting argument that discussion regarding a minimum freight charge was evidence of an agreement).

*Second*, the only other chat Plaintiff excerpts involving Mizuho similarly does not show that Mizuho reached an agreement with any other bank to fix the price of any free to trade GSE bonds.  That chat begins with a discussion about what to do in light of a new deal and the traders noting how much of a bond issue they have left to sell:

> Mizuho Securities Trader:
> what are we going to do in light of this new ml deal?
>
> FTN Financial Trader:
> I have 8mm left but it does have 2.00 vs 1.50
>
> Mizuho Securities Trader:
> I have 23mm
>
> Citigroup Global Markets Trader:
> yeah i have 14mm left but we do have more fees
> 99.875 ftt
>
> Mizuho Securities Trader:
> Cool

---

[3] Plaintiff's suggestion that the exchange reflects a conspiracy to set the free to trade price in the secondary market is also illogical.  The traders discuss waiting for the price of the GSE bonds to *decrease* from "99.87" to "99.85."  (SAC ¶ 183.)  However, it would not make sense for the traders to agree to a *decreased* price.

> Citigroup Global Markets Trader:
> FTT ON THE 10/1
>
> Mizuho Securities Trader:
> fft at 99.875 got it

(SAC ¶ 181.)  Although the participant from Citigroup had earlier mentioned "99.875 ftt," the SAC does not show that any agreement was reached regarding that price, as evidenced by its failure to allege that the bonds being discussed were sold at that free to trade price.  (*Id*.) Moreover, Citigroup avers that the SAC misquotes the chat as it relates to the Citigroup Global Markets Trader.  (Ans. of Citigroup Global Markets Inc. to SAC (R. Doc. 147) ¶ 181.)  As such, neither of Plaintiff's chat allegations are direct evidence that Mizuho participated in a conspiracy to fix the price of GSE Bonds.

In addition to the fact that neither chat shows an agreement between Mizuho and any other entity to fix the prices of any free to trade GSE bonds, these two isolated chats – from March 2012 and June 2013 – cannot support a finding of any unlawful agreement between Mizuho and other Defendants generally to fix free to trade GSE bond prices over the course of almost seven years.  *Cf. In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 979 (N.D. Iowa 2011) (dismissing claim where plaintiffs "expressly relied on an 'overarching' conspiracy among all of them that simply is not supported by any factual allegations"); *In re Optical Disk Drive Antitrust Litig.*, No. 10 MD 2143, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) (dismissing claim where allegations of sporadic conduct were "a far cry from establishing plausibility for a broad six year continuing agreement among all defendants to fix [] prices"); *cf. also Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 375 (5th Cir. 2014) (plaintiff failed to plead a Sherman Act claim where the "allegations d[id] not make it plausible that the [defendants] adopted a conscious commitment to a common scheme designed to achieve an unlawful objective").

**B.    Plaintiff Does Not Allege Any Circumstantial Evidence That Mizuho Participated in the Alleged Conspiracy.**

In addition to failing to plead direct evidence of Mizuho's participation in the purported conspiracy, the SAC does not allege circumstantial evidence sufficient to show that Mizuho participated in the alleged conspiracy.

*First*, Plaintiff still fails to plead facts showing that Mizuho engaged in parallel conduct with other Defendants, let alone parallel conduct suggesting a conspiracy to fix free to trade prices of GSE bonds.  *See In re Beef Indus. Antitrust Litig.*, 907 F.2d 510, 514 (5th Cir. 1990) (when relying on circumstantial evidence of price-fixing, an antitrust plaintiff "must first demonstrate that the defendants' actions were parallel").  To plead parallel conduct, Plaintiff would have to allege that *each Defendant* behaved in the same way with respect to the free to trade GSE bonds for the alleged multi-year conspiracy period.  *See, e.g.*, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 54 (S.D.N.Y. 2016) (finding sufficient allegations that each defendant made ISDA submissions reflecting the "exact same bid/ask spread" nearly every day for a multi-year period); *In re Currency Conversion Fee Antitrust Litig.*, 773 F. Supp. 2d 351, 367-73 (S.D.N.Y. 2011) (finding sufficient allegations that each defendant implemented the same foreign-currency conversion fee for a multi-year period).  Here, the SAC asserts no factual allegations about uniform and consistent pricing of free to trade GSE bonds by Defendants, or that Mizuho's pricing of free to trade bonds parallels that of the other Defendants.

Even if the SAC did allege parallel conduct, and it does not, Plaintiff's claim against Mizuho would still fail for the additional reason that Plaintiff pleads none of the required "plus factors."  In addition to parallel conduct, a plaintiff must also allege additional facts and circumstances – often referred to as "plus factors" – to create a plausible inference that any

11

alleged parallel conduct "flowed from a preceding agreement." *Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 137-38 (2d Cir. 2013). "Plus factors" that may support a plausible inference of conspiracy include: "(1) a common motive to conspire; (2) evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators; and (3) evidence of a high level of interfirm communications." *In re IRS*, 261 F. Supp. 3d at 463. Plaintiff pleads no such facts as to Mizuho.

*Second*, Plaintiff's reliance on statistics that allegedly show the impact of the alleged conspiracy on GSE bond prices (*see, e.g.*, SAC ¶ 209), is irrelevant because the results say nothing as to whether *Mizuho* participated in the alleged conspiracy. Plaintiff copied the statistics in the SAC from the New York Action.[4] (*Compare* SAC ¶¶ 209-250 *with* Ex. A, NY Cmpl. ¶¶ 204-246.) Judge Rakoff considered the exact statistics relied on by Plaintiff in the SAC and concluded that they "do not plausibly suggest that the particular defendants named in this suit were part of that conspiracy." *In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 365 (S.D.N.Y. 2019). As he explained:

> Even assuming that the pricefixing conspiracy extended beyond the banks appearing in the chatroom logs, there is no particular reason to believe that the other defendants named in this suit were involved apart from plaintiffs' say-so. The conspiracy could well have involved some of them, or none of them, or a mix of the named defendants and other GSE bond dealers. The Court has no meaningful way of distinguishing, and plaintiffs' statistics do not help.

---

[4] Plaintiff acknowledges that it did not do the statistical analysis it relies on. (*E.g.*, *id.* (alleging "[u]pon information and belief, Plaintiff avers that there has been an examination of GSE bond prices between 2009 and 2016"); *id.* ¶ 225 (erroneously referring to a plurality of "Plaintiffs," which pursued the New York Action, e.g., alleging "[f]or each GSE Bond issuance, *Plaintiffs*" did analysis (emphasis added))).

*Id.*  Here, too, the statistics do not support a finding that Mizuho was involved in any alleged conspiracy.  Accordingly, the SAC fails to plausibly allege a claim against Mizuho based on circumstantial evidence.

### C.    Allegations About Other Entities Are Insufficient To State a Claim Against Mizuho.

Even if the SAC sufficiently alleges that some other Defendants engaged in impermissible communications, such allegations are insufficient to state a claim against Mizuho. *See id.* at 364 (requiring that "there must be something in the complaint that ties each defendant to the conspiracy").  For that very reason, several courts have singled out specific defendants and dismissed them from conspiracy cases that went forward against other defendants.  *See, e.g.*, *id.* at 365;  *In re IRS*, 261 F. Supp. 3d at 483 (holding that allegations directed at one particular industry participant were "too sparse to sustain" plaintiffs' claims); *In re Platinum & Palladium Antitrust Litig.*, No. 14 Civ. 9391, 2017 WL 1169626, at *51 (S.D.N.Y. Mar. 28, 2017) (dismissing claims against an industry participant because complaint did "not plausibly support an inference that [that defendant] was part of the alleged conspiracy"); *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 678 (S.D.N.Y. 2016) ("The fact that UBS is a market maker . . . does not constitute circumstantial evidence of misconduct; such allegations could apply to any number of large banks, none of which is (or could be) named as defendants on that basis.").  The same analysis applies here.  An allegation that Mizuho sold some free to trade GSE bonds during the relevant time period is not a sufficient basis on which to allow Plaintiff's claims to go forward.

Nor can Plaintiff rely on general allegations about other Defendants in this action to sweep in Mizuho.  Allegations that are asserted against defendants "as a general collective bloc, or generalized claims of parallel conduct must . . . be set aside . . . as impermissible group pleading." *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388 (S.D.N.Y. 2019)

(internal quotation marks and citation omitted); *see also In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016) (dismissing claims because plaintiffs had "resort[ed] to . . . group pleading" and stating that "Plaintiffs must be able to separately state a claim against each and every defendant joined in this lawsuit").  Therefore, regardless of whether the SAC adequately alleges claims against *some* of the Defendants, general allegations about the "group" fail to support Plaintiff's claims against Mizuho.

## II.    Plaintiff Fails To State a Claim Under LUTPA Against Mizuho.

Plaintiff's claim under LUTPA should be dismissed because it is barred by the statutory exemption for financial institutions and is not adequately pleaded.

*First*, Plaintiff's claim is barred because LUTPA exempts financial institutions like Mizuho that are directly or indirectly regulated by federal and Louisiana agencies.  LUTPA does not apply to "[a]ny federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates . . . or federal banking regulators who possess authority to regulate unfair or deceptive trade practices."  La. Stat. Ann. § 51:1406(1).  "The purpose of this exemption is 'to avoid duplication and exclude financial institutions which are regulated by other authorities as to unfair or deceptive trade practices.'"  *Mariche v. Wells Fargo Bank, N.A.*, No. 11 Civ. 1191, 2012 WL 1057626, at *2 (E.D. La. Mar. 28, 2012).  Financial institutions are broadly exempted by this provision no matter the capacity in which they act.  *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 387 (5th Cir. 2013) ("The Louisiana Legislature has decided that [the] LUTPA should not apply to '[a]ny federally insured financial institution, its subsidiaries, and affiliates,' and has not set out any exception to this broad rule." (second alteration in original) (quoting La. Rev. Stat. Ann. § 51:1406(1))).

Plaintiff's allegations show that LUTPA does not apply to Mizuho.  Plaintiff affirmatively alleges that Mizuho is a registered broker dealer licensed to do business in all 50 states and is subject to the supervision of the SEC and FINRA.  (SAC ¶ 98.)  The Louisiana Office of Financial Institutions is responsible for licensing and regulating all broker-dealers in Louisiana, including Mizuho.  And Mizuho is an affiliate of Mizuho Bank (USA), which is federally-insured.[5]  Because Mizuho is regulated by federal and Louisiana agencies it is, thus, exempt from LUTPA, and the LUTPA claim should be dismissed.

*Second*, even if Plaintiff's LUTPA claim against Mizuho were not barred by statute, Plaintiff fails to state a claim under LUTPA.  LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Rev. Stat. § 51:1405(A).  "'[T]he range of prohibited practices under LUTPA is extremely narrow,' as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence."  *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 2013-1582, p. 21 (La. 5/7/14), 144 So. 3d 1011, 1025 (quoting *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633, p. 10 (La. 4/23/10), 35 So. 3d 1053, 1060)) (alteration in original).

In support of Plaintiff's LUTPA claim, the SAC asserts that Mizuho (and other Defendants) "engaged in deceptive business practices regarding the advertisement of their brokerage services, including making false statements regarding the use of their experience and skill in recommending investments."  (SAC ¶ 291.)  Where, as here, a "LUTPA claim is based on defendants' allegedly fraudulent misrepresentation, plaintiff's LUTPA claim must meet the

---

[5] *See* FDIC:  BankFind – Mizuho Bank (USA), https://research2.fdic.gov/bankfind/detail.html?bank=21843&name=Mizuho%20Bank%20(USA)&searchName=mizuho&searchFdic=&city=&state=&zip=&address=&searchWithin=&activeFlag=&searchByTradename=false&tabId=2.  The Court may take judicial notice of public records, including government websites, for the purpose of a Rule 12(b)(6) motion.  *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).

heightened pleading requirements of Rule 9(b)." *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009); *see also Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, No. 11 Civ. 556, 2014 WL 6674034, at *5 (M.D. La. Nov. 24, 2014).

The SAC fails to satisfy Rule 9(b), which requires Plaintiff to allege the "particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elec. Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation omitted). Plaintiff asserts that "as a result of these false statements," Defendants "sold securities at supra competitive prices . . . and made no effort to use their advertised skill and experience to vet these transactions." (SAC ¶ 292.) However, Plaintiff does not identify a single allegedly false statement made to it by Mizuho, let alone a representation made by Mizuho pertaining to GSE bonds. Thus, it necessarily fails to allege with particularity that Mizuho made any false statement or that Plaintiff relied on any such statement prior to making its alleged purchases of anticompetitively priced GSE bonds from Mizuho. Without any such allegations, Plaintiff's LUTPA claim does not meet the pleading requirements of Rule 9(b) – or even the more liberal requirements of Rule 8. *See Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 406 (E.D. La. 2016) (dismissing LUTPA claim where plaintiff failed to "include[] enough details to determine whether the actions alleged are 'immoral, unethical, oppressive, unscrupulous, or substantially injurious' so as to give rise to a LUTPA claim"). As with its Sherman Act claim, Plaintiff has not adequately pleaded its LUTPA claim and it should, accordingly, be dismissed.

### III.    Plaintiff Fails To State a Claim for Negligence Against Mizuho.

Plaintiff's claim for negligence under Louisiana law similarly fails because Plaintiff does not – and cannot – allege all of the required elements. To state a claim for negligence, a plaintiff

16

must allege that "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095, p. 8 (La. 3/10/06), 923 So. 2d 627, 633 (citation omitted).  Plaintiff has not pleaded the required elements of a negligence claim, including but not limited to the existence of a duty or that Mizuho breached any duty.

  *First*, Plaintiff does not allege that Mizuho owed it a legally cognizable duty.  Plaintiff makes a conclusory assertion, without any supporting factual allegations, that Mizuho, and other entities, "owed a duty of care to their customers, including the State of Louisiana" and that they had a "duty to ensure that the investments that they offered or brokered were suitable for the State of Louisiana as a client, and a duty to use reasonable care in recommending investments to the State of Louisiana."  (SAC ¶ 279.)  Although the SAC alleges that "the State of Louisiana entered into contracts to purchase more than 50 fixed rate FNMA and FHLMC securities based upon the recommendations" of certain defendants, including Mizuho (*id.* ¶ 280), it is black letter law that there is no general duty of care between parties entering into an arm's-length transaction.  *See Guimmo v. Albarado*, 99-286, p. 5 (La. App. 5 Cir. 7/27/99), 739 So. 2d 973, 975 (dealings with financial institutions are "generally considered to be arm's length transactions which do not impose any independent duty of care").  Plaintiff fails to allege any specific contractual arrangement or other source of any duty that would warrant departure from that general principle and provide the basis for a cognizable negligence claim against Mizuho here.

Louisiana law also "clearly foreclose[s]" any argument that Mizuho owed an implied duty to Plaintiff.  *See Grodner & Assocs., APLLC v. Regions Bank*, 338 F. Supp. 3d 488, 502 (M.D. La. 2018) (Dick, J.), *aff'd*, 766 F. App'x 12 (5th Cir. 2019) (any assertion by the plaintiff that the defendant owed "it numerous duties outside those clearly set forth in" the parties' agreement is "clearly foreclosed by Louisiana law") (citing La. Rev. Stat. 6:1124).  Louisiana law provides that a financial institution like Mizuho does not have a fiduciary duty to a customer absent a written agreement in which Mizuho specifically agreed "to act and perform in the capacity of a fiduciary."  La. Rev. Stat. § 6:1124 ("No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.").  Because Plaintiff does not plead any such agreement, or other provision supporting any claimed duty, its negligence claim fails and should be dismissed.

*Second*, even if Plaintiff had pleaded a cognizable duty – and it has not – Plaintiff fails to plead a breach.  Plaintiff does not adequately allege that Mizuho was part of a conspiracy or that Mizuho knew about any alleged conspiracy (*see supra* Section I), and alleges no specifics about what *free to trade GSE bonds* were sold to Plaintiff by Mizuho and at what prices; all Plaintiff alleges is the total amount of GSE bonds purchased from or sold to Mizuho between July 2010 and June 2013, without distinction between whether those transactions related to syndication (about which there are not claims) or free to trade transactions.  (SAC ¶ 267.)  Plaintiff's bald assertion that Mizuho knew or should have known that the bonds it sold to Plaintiff "were the subject of a fraud or scam; i.e., the unlawful price fixing scheme of the remaining 'chat room'

defendants" (*id.* ¶ 286), has no factual support in the SAC and cannot itself serve as the basis for

a claim of breach of duty.  Accordingly, Mizuho's negligence claim should be dismissed

## **CONCLUSION**

Now for the third time, Plaintiff fails to plausibly allege facts sufficient to show Mizuho's

participation in any alleged conspiracy to fix prices for GSE bonds.  Plaintiff's claims against

Mizuho should therefore be dismissed with prejudice for failure to state a claim upon which

relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  August 7, 2020                                    Respectfully submitted,

                                                                    */s/  Stacey Anne Mahoney*
                                                        Stacey Anne Mahoney (*pro hac vice*)
                                                        Alexander J. Scolnik (*pro hac vice*)
                                                        MORGAN, LEWIS & BOCKIUS LLP
                                                        101 Park Avenue
                                                        New York, NY 10178
                                                        Telephone: (212) 309-6000
                                                        Facsimile: (212) 309-6001
                                                        stacey.mahoney@morganlewis.com
                                                        alexander.scolnik@morganlewis.com


                                                                    */s/  James A. Brown*
                                                        James A. Brown, T.A. (Bar #14101)
                                                        A'Dair R. Flynt (Bar # 37120)
                                                        LISKOW & LEWIS, PLC
                                                        701 Poydras Street, Suite 5000
                                                        New Orleans, Louisiana 70139-5099
                                                        Telephone: (504) 581-7979
                                                        Facsimile: (504) 556-4108
                                                        jabrown@liskow.com
                                                        aflynt@liskow.com

                                                        *Attorneys for Defendant Mizuho Securities
                                                        USA LLC*

19

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 7th day of August 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ James A. Brown*
James A. Brown
