**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

---

**STATE OF LOUISIANA,**
**By and through its Attorney General,**
**JEFF LANDRY,**

      **Plaintiff,**

**v.**                                                              **Case No. 3:19-CV-00638**

**BANK OF AMERICA CORPORATION, individually**
**and d/b/a BANC OF AMERICA SECURITIES; BARCLAYS**
**BANK PLC; BARCLAYS CAPITAL INC.; BNP**
**PARIBAS SECURITIES CORP.; CITIGROUP GLOBAL**
**MARKETS INC.; CREDIT SUISSE AG; CREDIT**
**SUISSE SECURITIES (USA) LLC; JEFFERIES GROUP**
**LLC; JPMORGAN CHASE**
**BANK, N.A.; J. P. MORGAN SECURITIES LLC; MERRILL**
**LYNCH, PIERCE, FENNER & SMITH INC;**
**R.W. BAIRD & CO., STIFEL NICOLAUS & CO., INC., MIZUHO**
**SECURITIES, USA LLC, UBS SECURITIES LLC; NOMURA**
**SECURITIES INTERNATIONAL, INC.,**
**HSBC SECURITIES USA, INC., CANTOR FITZGERALD & CO., HILLTOP**
**SECURITIES, INC., SG AMERICAS SECURITIES, LLC., MORGAN**
**STANLEY & CO., LLC, TD Securities, LLC,**
**and UNNAMED COCONSPIRATORS**

      **Defendants.**

---

**MEMORANDUM IN SUPPORT OF THE PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO THE JULY 27, 2020 MOTION TO DISMISS FILED BY DEFENDANT JEFFERIES**
**GROUP, LLC**

---

COMES NOW THE PLAINTIFF, by and through undersigned counsel of record who for

response to the Motions to Dismiss filed herein by Defendant, Jefferies Group, LLC would state

as follows:

**FACTUAL BACKGROUND**

    *a.  The Claims against Jefferies Group, LLC in the Second Amended Complaint.*

This is a Sherman Act Anti-Trust Claim. In this lawsuit, the Plaintiff, State of Louisiana is the purchaser of millions of dollars of GSE Bonds. All of the Defendants are sellers of these bonds in the Secondary Market.  The Defendants alleged herein to have participated in the  conspiratorial multi-bank chats regarding pricing in the secondary market for GSE Bonds are Defendants Barclays, Bank of America/Merrill Lynch, Citigroup, Credit Suisse, Deutsche Bank, Goldman Sachs, BNP Paribas, First Tennessee, TD Securities, Morgan Stanley, Nomura, JPMorgan, Cantor Fitzgerald, UBS, Stifel Nicolaus and Co., Morgan Keegan, Jefferies Group, LLC, RBC Capital Markets, Wells Fargo Securities, LLC Mizuho Securities, and HSBC.[1]

The Complaint alleges that this conspiracy operated by allowing these Defendants, who communicate with each other in the syndication phase of the GSE Bond issuance process, to use those electronic communication to do more than discuss syndication:  they discussed and fixed prices for the bonds to be sold on the secondary market.  This is referred to as the "FTT" price or the "Free To Trade" price.

The Complaints references to Jefferies are direct. First, it names Jefferies as member of the conspiracy ( See Paragraph 6 of the Amended Complaint).  In paragraph 103, page 30 the Complaint specifically alleges that "Between 2009 and 2016, it made trades for billions of dollars of GSE bonds and sold GSE bonds to the State of Louisiana.".  It explains how Jefferies' co-defendants controlled the supply of GSE bonds in the market, and the explains how Jefferies participated directly in the conspiracy by quoting transcripts, obtained by Plaintiff from co-operating Defendants, demonstrating examples of dates time and persons involved in Jefferies' acts of price-fixing.  Paragraph 179 is dedicated to examples of price fixing between Jefferies and various other banks, Wells Fargo.  Paragraph 181 addresses price fixing between Jefferies,  BNP

---

[1] Three participants in this scheme have settled all claims with the Plaintiffs and are not sued in this case, Deutsche Bank, Goldman Sachs and First Tennessee Bank.

Paribas, Deutsche Bank and other banks.  The transcripts identify the dates and the prices fixed. Paragraph 181 then also identifies specific GSE Bonds purchased by the State of Louisiana at the inflated prices during the period of time in which this conspiracy flourished.

In response, Jefferies argues that (1) the Complaint contains no direct or circumstantial evidence that they participated in the conspiracy to fix the prices for GSE bonds, (2) that the Plaintiffs' LUTPA claims are time barred, (3) that they are exempt from LUTPA as an entity regulated by the Louisiana Office of Financial Institutions; and (4) that the LUTPA allegations fail to state a claim because they claim that the Complaint's LUTPA claims have no information which addresses a motive by Jefferies to harm competition.

These arguments are not well taken and are addressed in turn.

## 1.  Standard of Review for a Motion to Dismiss

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the plaintiff's well-pleaded allegations of facts must be accepted as true, and a court must "construe the complaint in a light favorable to that plaintiff." *BRFHH Shreveport, LLC v. Willis Knighton Med. Ctr*., 2016 WL 1271075, at *5 (W.D.La. 2016)(*quoting In re Great Lakes Dredge & Dock Co*., 624 F.3d 201, 210 (5th Cir. 2010)).

A claim is "facially plausible" when a plaintiff pleads facts that permit the court to "reasonably infer a defendant is liable for the alleged misconduct." *Id.* (citations omitted).  "So long as it raises a plausible right of recovery and puts the defendant on notice of the plaintiff's claim and grounds upon which it rests, however, the complaint does not need to specify detailed factual allegations." *Id.* at 15 (*citing* Twombly, 550 U.S. at 555)[*emphasis added*].

Moreover, in antitrust cases, where "the proof is largely in the hands of the alleged conspirators," dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.  *Blanchard & Co. v. Barrick Gold Corp*., 2003 WL 22071173, at *3 (E.D.La. 2003)(*quoting Hosp. Bldg. Co. v. Trustees of Rex Hosp*., 425 U.S. 738, 746 (1976))(citations omitted).  *Twombly* states the following regarding the allegations necessary to be included in a complaint which would be sufficient to plead an antitrust claim.

> We hold that stating such a [section 1] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." . . .

> A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."

*Twombly*, 550 U.S. 554 – 57 (citations omitted)[*emphasis added*].

Based upon the foregoing pleading standard, and considering the information contained in the Complaint and the Amended Complaint, the Motion to Dismiss must be denied.  As we know now that Jefferies is integrally engaged in the chat room conspiracy to fix prices for GSE bonds, as this case has the rare "smoking gun" evidence not usually seen in anti-trust cases.  As it can be shown through these examples that Jefferies is a cartel member, the complaint demonstrates that the Plaintiffs have stated a cause of action for each of the counts in this lawsuit.

1. **Jefferies Claim that there is no Direct Evidence of a Sherman Act Violation is Patently False**

While it is certainly not necessary to address the substantive issues raised in the Motion, for sake of clarity these will be addressed. In their motion to dismiss, defendant Jeffries claims that the plaintiff's entire case against them rest on one piece of direct evidence which is one quotation in one chat transcript. They claim that this chat he is in all actuality a quote taken during the syndication phase of the bond issuing process and therefore is not unlawful. This position is incorrect.

To establish liability under The Sherman Act, 15 U.S.C., §1, a plaintiff must show that the defendants "(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 220 (5th Cir. 2001)."An antitrust conspiracy is rarely shown by direct evidence, and usually is proved by inference and suspicion." (*citing United States v. Paramount Pictures, Inc*., 334 U.S. 131 (1948))). A plaintiff seeking to prove that a defendant joined a conspiracy must also provide evidence that the conspiring parties "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (citation omitted). For purposes of this motion, the Plaintiff must provide evidence showing Jefferies knew "the essential nature and general scope" of the joint plan. *H & B Equip. Co. v. Int'l Harvester Co*., 577 F.2d 239, 245 (5th Cir. 1978) (citation omitted). However, there is no need to prove that Jefferies orchestrated the plan. Rather, parties who knowingly join an antitrust conspiracy, like any conspiracy, are liable to the same extent as other conspirators. *See* "It is well-established that, as a participant in [a bid-rigging] conspiracy, [Jefferies] is legally liable for all the acts of its co-conspirators in furtherance of this crime." *United States v. All Star Indus*., 962 F.2d 465, 478 (5th Cir. 1992).

Allegations of direct evidence are sufficient on their own to demonstrate the existence of a price-fixing agreement; *i.e.*, Plaintiffs are not required to separately allege that Defendants engaged in parallel conduct or plead "plus factors" that support the inference of a conspiracy. *Mayor & City Council of Balt. v. Citigroup, Inc*., 709 F.3d 129, 136 (2ⁿᵈ Cir. 2013); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323–24 (3d Cir. 2010) ("[a]llegations of direct evidence of an agreement, if sufficiently detailed, are independently adequate" to state a Section 1 claim). Plaintiffs here allege two forms of direct evidence that plausibly allege an agreement among Defendants to fix GSE Bond prices: (1) facts from one of Defendants' co-conspirators; and (2) electronic communications among Defendants' traders, reflecting an agreement to fix prices in the secondary market for GSE Bonds. In the original complaint ( paragraph 75) the Plaintiff's quote directly from a chat room transcript conversation between two cartel members to fix prices for GSE Bonds.  The Complaint states as follows on Page 58:

**<u>Jefferies Group, LLC/Wells Fargo Securities/FTN Financial Securities
Corp./Morgan Stanley & Co.</u>**

184. Jefferies Group, LLC and FTN Financial Securities Corp., Wells Fargo Securities
and Morgan Stanley & Co. agreed to set the price for GSE Bonds, as follows:

<u>May 5, 2015</u>
10:19:38 JEFFERIES LLC Trader 1 says:
Spread off my marks but fixed

10:20:37 Wells Fargo Trader 1 says:
so how r we showing now, and r we growing?

10:20:39 FTN Trader 1 says:
i'm fine adjusting the concession w/the market move but we have a decent amount of
bonds (in aggregate) so i don't see a pressing need to upsize

10:21:36 JEFFERIES LLC Trader 1 says:
ok, less .50c?

05/05/2015 10:21:47 JEFFERIES LLC Trader 1 says:
Or fit 99.95?

05/05/2015 10:21:56 JEFFERIES LLC trader 1 says:
Whatever works here

Morgan Stanley Trader:
-35c?

Jefferies Trader:
You guys have the most so I'll do whatever Wells

Fargo Trader:
i was thinking 100-0.40 Wells

Fargo Trader:
nmag is 99.90 on the freddie 2.00's FTN

Financial Trader:
nice middle ground [. . .] lets go less $.40 Morgan

Stanley Trader:
40c works

Morgan Stanley Trader:
also - sounds like [. . .] is pretty hell bent on $ averaging in, and can keep the - 40c. i
dont mind topping off with 10mm more, and putting back on top of nim2 but i'll go with
group - will let you guys decide w him

Jefferies Trader:
Done

This discussion of a "Free To Trade" price, without regard to whether the conversation occurred

during syndication or not demonstrates a 1) willingness to discuss price and 2) at least an attempt

to conspire regarding price, even if this conversation is not characterized as an agreement. There

is a request by the Jefferies to discuss price and obtain an agreement from the Wells Fargo trader

on an "ftt" price of 99.95.

Jefferies faults the Plaintiff's proof by alleging that 1) there is only one transcript quoted,

2) that this quotation does not evidence an agreement; and 3) that this conversation occurred during

the syndication phase, therefore this discussion of the "FTT" price is lawful.  Alternatively they

seem to argue that the Plaintiff's proof addresses what the Defendants were paying for the bonds themselves.  None of these arguments are well taken and are boilerplate copies of arguments other Defendants have raised in the case originating from the Southern District of New York regarding this GSE Bond conspiracy.  See *In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354 (S.D.N.Y. 2019).  Defendants in that case filed a motion to dismiss that complaint using the exact same argument.

In response to the argument that discussions in the chat rooms did not demonstrate a specific agreement to fix prices, Judge Rakoff ruled that this did not warrant dismissal, but in fact **bolstered** the claims of conspiracy:

> "…That suggests that defendants were willing to talk prices, even during the FTT phase.  Defendants also argue that "the dealers did <u>not</u> agree on a price." JMD Mem. 14.  But this is wrong both as to the facts and as to the law.  Legally, an attempt to conspire, while not itself independently actionable, still supports the allegation of a broader conspiracy on other occasions.  And factually, defendants mischaracterize the conversation; in actuality, one defendant, BNP, immediately agrees to the price suggested by the Deutsche Bank trader, while Merrill Lynch says its prices might go <u>higher</u> but that it would not undercut the others by going lower.  This, on its face, is blatant price-fixing."

*In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 362 (S.D.N.Y. 2019).  Therefore, even if this example does not demonstrate an agreement by Wells Fargo, it does demonstrate a willingness by Jefferies to talk prices.  It also demonstrates at a minimum, an attempt by Jefferies to conspire, which, as Judge Rakoff noted, supports the allegation of a broader conspiracy on other occasions.  The Motion to Dismiss on this point respectfully should be denied.

Put simply, the Plaintiffs have alleged direct evidence of an agreement between other defendants to fix prices.  The Complaint clearly states that Jefferies participated in this conspiracy.  The Complaint AND the Amended Complaint contains a chat room transcript involving Jefferies colluding with co-defendants to fix ftt prices of GSE bonds.  That direct evidence has been

sufficiently detailed in an extensive transcript showing participation in the conspiracy to fix prices. There are clear allegations in the Amended Complaint as to the entities which participated in this conspiracy and the extent of their participation.   Therefore, there is sufficient direct evidence alleged to state a Section 1 Sherman Act claim. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323–24 (3d Cir. 2010).  The Motion to Dismiss therefore should be denied.

Jefferies' further response is that 1) discussion of price during the syndication phase is lawful and 2) that one example of a chat room conversion does not indicate that they have been involved in the entire GSE Price Fixing Conspiracy.  Both of these arguments are in error.

Again, this argument is recycled from the Southern District of New York, *In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354,  (S.D.N.Y. 2019). In that case, Judge Rakoff denied the other Defendants' motions to dismiss on these selfsame arguments.

First, regarding Jefferies' claim that "one chat" does not implicate it in the conspiracy, Judge Rakoff held as follows:

> Defendants offer a slew of arguments against relying on the chat logs, but none of them is persuasive. First, defendants emphasize that there are only four chats, representing conversations about four bonds during a period when tens of thousands were traded. JDM Mem. 13. But plaintiffs are not expected to marshal evidence (especially at this early stage) of every single time defendants unlawfully conspired. Moreover, the tone of the conversations suggests that these were not isolated instances. At no point do any of the involved traders say, for example, that they should not be fixing prices. The only time anyone voices concern is the Goldman Sachs trader during the July 17, 2012 chat, but that objection is solely about the timing of the conversation, not about its happening at all.

> Contrary to defendants' argument, there is no rule that isolated occurrences of conspiratorial conduct do not qualify as direct evidence. Direct evidence can even be "a recorded phone call in which two competitors agreed to fix prices at a certain level." Mayor and City Council of Baltimore, 709 F.3d at 136. Here, plaintiffs have produced, not one chat log, but four. That is more than adequate to allege the existence of a conspiracy, at least against those defendants implicated by the chats. Such communications have repeatedly been held sufficient for pleading purposes. E.g., Silver Fix II, 332 F. Supp. 3d at 901-03 ; In re Foreign Exchange

<u>Benchmark Rates Antitrust Litig.</u> ("<u>FX I</u>"), <u>74 F. Supp. 3d 581, 591-92</u> (S.D.N.Y. 2015).

*In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 361 (S.D.N.Y. 2019).

Secondly Jefferies' argument that discussion of prices during syndication is lawful was also soundly rejected:

> Second, defendants argue that these communications were lawful for co-underwriters acting in a syndicate. JMD Mem. 13-14. Plaintiffs appear to agree that traders are permitted to communicate during the syndication phase for certain purposes. PI. Mem. Opp. Joint Mot. Dismiss ("JMD Opp.") 18, ECF No. 35. But, plaintiffs argue, while defendants are allowed to communicate about primary market sales during this time - sales that the defendants make jointly - they are not permitted to communicate during this period (or otherwise) about secondary market sales when they are competitors. The Court agrees.
>
> Specifically, the Second Circuit has held that the "corruption" of a "cooperative endeavor" can be actionable under the antitrust laws. In <u>Gelboim</u>, the district court dismissed a complaint alleging a LIBOR-setting conspiracy, in part because it found that the defendants were engaged in a "cooperative endeavor." <u>823 F.3d at 775</u>. The Second Circuit reversed, because "the Banks circumvented the LIBOR-setting rules, and that joint process thus turned into collusion." <u>Id.</u> This case is closely analogous.
>
> Defendants have no serious answer for this objection. They simply insist that any kind of communication during syndication is permitted, as though that excuses any conversations about price-fixing at any stage. The Court cannot agree. If it is illegal to fix the secondary prices for bonds once they are on the market - and defendants do not dispute that it would be - it cannot be legal to fix such prices through conversations that occur right before the bonds go on the market.

*In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 361-62 (S.D.N.Y. 2019). The answer could not be any plainer:  any discussion of a "ftt" or "free to trade" price, whether the conversation occurred during syndication or not, is unlawful. Jefferies argument about this point is without merit.

Jefferies also claims that the Plaintiff has failed to demonstrate that it purchased GSE bonds from them.  This is simply not a requirement of a conspiracy case.  All members  who knowingly join an antitrust conspiracy, like any conspiracy, are liable to the same extent as other conspirators.

"It is well-established that, as a participant in [a bid-rigging] conspiracy, [Jefferies] is legally liable for all the acts of its co-conspirators in furtherance of this crime." *United States v. All Star Indus*., 962 F.2d 465, 478 (5th Cir. 1992). Therefore, it is not relevant whether the plaintiff purchased bonds from Jefferies to state a claim. The Plaintiff must only show that it purchased GSE Bonds from ANY of the cartel members. This has been shown repeatedly in the Complaint.

2. **A Circumstantial Evidence Case against Jefferies and the other "chat room" defendants has been properly pled in the Second Amended Complaint.**

While there is clearly a direct evidence, Jefferies has also argued that there is no circumstantial evidence to support the claims in the complaint of a conspiracy. To the extent that Jefferies participated, this has been alleged directly, and there is no need to infer their participation. However, as to the tangential claim here that there is no circumstantial evidence of the existence of this conspiracy, the Plaintiffs dispute this argument.

"Circumstantial evidence requires additional inferences in order to support a conspiracy claim." *Golden Bridge Technology, Inc. v. Motorola, Inc*., 547 F.3d 266, 271. An antitrust complaint relying on circumstantial evidence must plead facts showing both: (1) parallel conduct by the alleged conspirators, and (2) "plus factors" that support an inference of concerted action. *See In re Pool Prods. Distrib. Mkt. Antitrust Litig*., 988 F.Supp.2d 696, 711 (E.D. La. 2013). "[P]lus factors traditionally include: (1) 'a common motive to conspire'; (2) 'evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators'; and (3) 'evidence of a high level of interfirm communications.'" In re *Propranolol*

*Antitrust Litig.*, 249 F.Supp.3d., 712, 718 (2017) (citing *Gelboim v. Bank of Am. Corp.,* 823 F.3d 759, 781).[2]  All these factors are properly alleged in Plaintiffs' Second Am. Compl..

Page 75, ¶193 of the Am. Compl., (as well as the Complaint) specifically states that circumstantial evidence exists, and the following paragraphs begin to explain what that circumstantial evidence is. This is the parallel conduct and "plus factors" required to support a *prima facie* case of conspiracy pursuant to the Sherman Anti Trust Act.   It lists the following as circumstantial evidence applicable to ALL chat room defendants, including Jefferies Group, LLC:

1) That there exists a system that put horizontal competitors in private chats together creating the opportunity to collude(Paragraphs 80-86 Original Complaint);

2) The fact that traders moved between the same companies and interacted socially created an environment where collusion was likely to occur(Original Complaint, Paragraphs 87-92);

3) The GSEs themselves created a market where collusion flourished (Original Complaint, Paragraphs 93-96);

4) The fact that there are high barriers to entry and the fact that the market is so concentrated made a small number of firms eligible to participate, and made collusion more likely (Paragraphs 97-99); and

5) Economic analysis has demonstrated that the bid ask spreads were artificially inflated between 2009 and 2016 which was inconsistent with normal competitive market

---

[2] "[T]hese plus factors are neither exhaustive nor exclusive, but rather illustrative of the type of circumstances which, when combined with parallel behavior, might permit a jury to infer the existence of an agreement." *City of Balt.*, 709 F.3d at 136, n.6.

conditions, thereby creating additional circumstantial evidence that collusion occurred (Paragraphs 100-102).

Therefore, the five factors explicitly plead in both the Original Complaint and the Amended Complaint. demonstrate the five types of evidence needed to support pleading a circumstantial case:  1) that there was a motive to collude, 2) that there were acts against self-interest; 3)  the opportunity to collude due to the frequent contacts between traders, 4) the highly concentrated market and 5) the high barriers to entry.

Motive.  Motive has been raised in the Second Am. Complaint. because it pleads that there was a motive to collude based on the fact that the trader's own compensation was tied to profit. As noted in *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 287 (1968) the  "likelihood of increased profits" can be a motive to conspire; *Gelboim*, 823 F.3d at 782.

Acts Against Self Interest. If there was no conspiracy to fix prices, any Defendant who maintained supracompetitive GSE Bond prices would, on its face, be  action against its economic self-interest because of the ranking system used in  GSE  Bond market. GSEs rank Approved GSE Bond Dealers according to their market share.  (*See* Paragraphs 93-96).  The higher a dealer's ranking, the greater its likelihood of receiving lucrative contracts from the GSEs, including for larger bond underwriting deals and derivatives trading services.  *Id*.  Thus, each Approved GSE Bond Dealer  would normally be incentivized to lower prices (*i.e*., "race to the bottom") to win business from competitors and increase their revenue through greater market share. *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 327 (2d Cir. 2010); *see also Propranolol*, 249 F.Supp.3d at 720 ("[a] rational competitor therefore should have kept its prices stable and vastly increased its market share").  The existence of this irrational conduct is circumstantial evidence of a conspiracy to fix prices because it should and did not lead to lower GSE Bond sales, lower rankings and lesser

chances of the defendants being rewarded additional GSE Bond business (Paragraphs 93-96). This irrational conduct can be considered circumstantial evidence of conspiracy. *Id.*

Opportunity to Collude. Additionally, it has been noted that "the opportunity to conspire [is] but one of a series of plus factors supporting an inference that Defendants' parallel conduct flowed from conspiracy." *Iowa Public Employees' Retirement v. Merrill Lynch,* 340 F.Supp.3D 285, 322. The GSE Bond issuance process, by its very nature, created a large number of contacts and communications of firms such as Jefferies and other ostensible competitors such as Jefferies Group, LLC which then gave them the opportunity to communicate in group chats about the placement of bonds in the primary market. And "because Defendants could communicate freely with one another during the underwriting and syndication of GSE Bonds, they were able to use those lines of communication to enter into illegal agreements about pricing once the bonds were FTT in the secondary market." The open communication among banks was further facilitated by the social gatherings at which traders were regular participants. Taken together with the whole of Plaintiffs' Second Am. Compl., the high number of interfirm communications among what should have been horizontal competitors in the secondary market for GSE Bonds is further circumstantial evidence that supports the allegation that Defendants conspired to fix prices. *Id.*

High Barrier to Entry into the Market by other Competitors. As alleged in the Second Am. Compl., "[i]t is expensive to become an Approved GSE Bond Dealer, and few banks can bear the costs and risks associated with carrying sufficient GSE Bond inventory to serve as a dealer in the GSE Bond market." *See* ¶98. Smaller banks are therefore incapable of trading the volume of GSE Bonds needed to ever become ranked high enough on the GSE Issuers' scorecards to be a regular participant in the GSE Bonds process.

Taken together, the above alleged plus factors, direct evidence of price fixing in chat rooms, and Plaintiffs' economic evidence cross the threshold of plausibility and allow the Court to draw the inference that Defendants conspired to fix prices in the GSE Bond secondary market. This is a properly plead circumstantial evidence case, with parallel conduct alleged as well as plus factors. *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 988 F.Supp.2d 696, 711 (E.D. La. 2013). The Motion to Dismiss should therefore be denied, as to the Complaint.

3. **Participation in the Chatroom Conspiracy is a LUTPA violation because price fixing and the concealment of price fixing involves fraud or deception by definition, and harms competition.**

Next, Jefferies, argues in the Motion to Dismiss that its conduct does not constitute a LUTPA violation, as the Plaintiff has shown no specific act of fraud or deception it committed. Jefferies claims that the Plaintiffs have only alleged that it failed to discover the chatroom conspiracy, and that this is insufficient to support a LUTPA claim. This is not the Plaintiff's position. The Complaint states that Jefferies Group LLC has committed a LUTPA violation by participating in the chatroom conspiracy. Also, it alleges that the subsequent sale of those price fixed securities by Jefferies is a violation of LUTPA, as this is not a simple omission: this is a fraudulent concealment of their own illegal conduct. Therefore, the only real question is whether the blatant chat room participation of Jefferies, and the subsequent brokering of those selfsame securities by it, is a violation of LUTPA. The Plaintiffs aver that these are violations on their face.

In LUTPA, the legislature declared it to be unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La.Rev.Stat. § 51: 1405. Because of the broad sweep of this language, "Louisiana courts determine what is a LUTPA violation on a case-by-case basis." Keith E. Andrews, Comment, Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a

Confusing Body of Case Law, 41 Loy. L.Rev. 759, 762 (1996) (hereinafter "Andrews"). This court has consistently held that in establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09–1633, p. 11 (La.4/23/10), 35 So.3d 1053, 1059.

In the Complaint and in the Amended Complaint, Jefferies is alleged to have engaged in a horizontal conspiracy with other defendants to fix prices on products sold to the State of Louisiana. In addition, once those prices were fixed, the Complaint. alleges that the Defendants, including Jefferies, engaged in the sale or brokering of these same securities to the Plaintiffs, all while failing to disclose they were involved in this scheme.   The Plaintiffs complaint therefore offers the position that clandestinely selling price fixed securities to unsuspecting buyers is an immoral, unscrupulous or unethical act which should be barred by LUTPA on its face.  *Cheramie Services,* 09–1633 at 12, 35 So.3d at 1060 ("[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.");

A horizontal agreement among competitors to fix prices is a per se violation of the antitrust laws. *Socony-Vacuum*, 310 U.S. at 223.   It matters not whether any specific price was literally "fixed" or agreed-to rather than simply depressed. Id. at 222 (price-fixing illegal even where prices "were not fixed in the sense that they were uniform and inflexible").

The application of LUTPA to these per se violations of antitrust laws by the Complaint  is well within the remedial purpose of the Act:  to protect consumers and to foster competition. See *Andrews*, 41 Loy. L.Rev. at 777.   Therefore, a reasonable construction of the act would be to state that a per se violation of anti trust laws built on a price fixing conspiracy is also an immoral act by

definition proscribed by the Act and constitutes a violation of LUTPA on its face.  Id.  The Motion

to Dismiss on this basis must be denied.

   **4.  Jefferies is Regulated by FINRA and as such does not qualify to Claim an Exemption
      from LUTPA under La. Rev. Statute 51:1406(1)**

   Defendant Jefferies also argues that it is exempt from LUTPA claims because it claims

that there is a bar on LUTPA claims against entities registered with the Louisiana Office of

Financial Institutions.  However, this claim partially incorrect.  As Jefferies admits in its motion,

it is actually regulated by FINRA (See Note8, pg. 18).  "…FINRA an "independent" regulator of

securities firms, and therefore an organization licensed by it does not qualify for an exemption

under LUTPA. Rec. Doc. 231, (quoting La. R.S. 51:1406(1))." Grant v.  Houser, CIVIL ACTION

NUMBER: 10-0805, 7 (E.D. La. Jun. 10, 2013).

   While the Defendant seeks to minimize the fact that it is regulated by FINRA, the Court in

Houser found it determinative.  In other cases, courts have noted that "…the reason entities that

are licensed by Office of Financial Institutions, its subsidiaries, and affiliates are exempt from the

LUTPA is to avoid duplication by excluding financial institutions, which are regulated by other

authorities as to unfair or deceptive trade practices." See *Mariche v. Wells Fargo Bank, N.A*., No.

11-1191, 2012 WL 1057626, at *2 (E.D. La. Mar. 28, 2012), (quoting *Carriere v. Proponent

Federal Credit Union*, 2004 WL 1638250 at *7 (W.D. La. July 12, 2004)).  *Grant v. Houser*,

CIVIL ACTION NUMBER: 10-0805, 8 (E.D. La. Jun. 10, 2013)…However, as noted by the Court

in Houser, those "Defendants have not cited to any case law where a court has exempted similar

defendant securities brokers under the LUTPA." *Grant v. Houser*, CIVIL ACTION NUMBER:

10-0805, 8 (E.D. La. Jun. 10, 2013).  Likewise this Court should decline to create such a rule.  The

Motion to Dismiss on this basis must be denied.

   **1.  The State of Louisiana has properly pled a Claim for Negligence under Louisiana Law**

To allege a negligent misrepresentation claim under Louisiana law the plaintiff must allege that "the defendant owed a [legal] duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached." <u>Granger v. Christus Health Cent. La</u>., 2012-1892 (La. 6/28/13), 144 So. 3d 736, 766-67 (citing <u>Barrie v. V.P. Exterminators, Inc</u>., 625 So. 2d 1007, 1015 (La. 1993)).

a. <u>Jefferies owed a legally cognizable duty to the Plaintiffs.</u>

The First and Second Amended Complaints. outlines four duties owed by Jefferies (1) "a duty to ensure that the investments that they offered or brokered were suitable for the Plaintiffs as a client," (2) a "duty to avoid unreasonable behavior which puts a client at risk of financial harm," (3) "a duty to use reasonable care in recommending investments to the  Plaintiffs," and (4) a "duty to avoid recommending investments which it knew or should have known would constitute fraud or a scam." *See* ¶174.   The existence of each of these duties is supported by the fact that Jefferies is a registered broker dealer with FINRA which clearly mandates that it conform to each of these duties outlined in the Second Am. Compl..

There is no doubt nor dispute that Jefferies is regulated by FINRA as it is listed on their website as one of the firms it regulates.[3] The dubious position raised by Jefferies that there is no duty owed to the Plaintiff is laid bare as an outright fabrication by the publications from FINRA which make clear these duties exist for *every member*:

> You are obligated to disclose material information about investments that you discuss with or recommend to potential investors. Misrepresenting or omitting any material information in both discussions and distributed materials is prohibited and, under certain circumstances, may be considered fraud."

> Suitability Requirements If you make recommendations, you must understand the customer's investment profile, which includes, but is not limited to, factors such as the customer's age, other investments, financial situation and needs, tax status,

---

[3]https://www.finra.org/about/firms-we-regulate

investment objectives, investment experience, investment time horizon, liquidity needs, risk tolerance and any other information that the customer may disclose. FINRA Rule 2111.05 imposes the following three obligations when making a recommendation: reasonable basis suitability (recommendation must be suitable for at least some investors), customer specific suitability (recommendation must be suitable for a particular customer) and quantitative suitability (a series of recommendations must be suitable when taken together in light of a customer's investment profile)."

…According to FINRA Rule 5310, firms must provide the customer with the most favorable price ("best execution price") under prevailing market conditions.[4]

These known duties of securities brokers regulated by FINRA are the same as those set forth in the Second Amended Complaint..  This defendant owed a clear duty to get the Plaintiffs the best price which it could not do while offering securities which it knew had been fixed at supra-competitive prices.  Jefferies had a duty to offer "suitable" investments as that term is defined and as alleged in the Complaint.  Bonds which have been price-fixed cannot, by definition, be "suitable" investments.  The existence of these duties is simply irrefutable in the face of Jefferies' membership in FINRA.  The Motion to Dismiss in this regard should denied.

In their capacity as brokers, each Defendant owed a fiduciary duty to the State of Louisiana. *See*, *Beckstrom v. Parnell*, 730 So. 2d. 942, 949 (La. App. 1 Cir. 11/6/98); *See also, Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834, F. 2d 523, 530 (5th Cir. La. 12/29/87) (holding that a broker owes his client a fiduciary duty).

In Louisiana, a fiduciary's duty includes the ordinary duties owed under tort principles, as well as a legally imposed duty which requires the fiduciary to handle matters "as though it were his own affair." *Federal Deposit Insurance Corporation v. Caplan*, 874 F. Supp. 741, 744 (W.D. La. 1995). "In addition, the 'fiduciary may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights of his principal against all other

---

[4]https://www.finra.org/sites/default/files/Industry/p299085.pdf

persons whomsoever, and is bound not to act in antagonism, opposition or conflict with the interest of the principal to even the slightest extent." *Id.* The dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other and the person occupying such a relationship cannot further his own interests and enjoy the fruits of an advantage taken of such relationship. *Plaquemines Parish Commission Council v. Delta Development Co.*, 502 So.2d 1034, 1040 (La. 1987). Rather, fiduciaries, such as Defendants, must make a full disclosure of all material facts surrounding the transaction that might affect the decision of their principal. *Id.*

Moreover, when proving investment and other financial advice, Defendants were duty bound to advise the State of Louisiana diligently, in accordance with the standard of care generally utilized among similar financial advisers. For instance, in *Roger v. Dufrene*, 99-2224 (La. 2/22/93), 613 So.2d 947, 949,  the Louisiana Supreme Court recognized the existence of such a duty as follows:

> The nature of certain professions is such that the fact of employment does not imply a promise of success, but an agreement to employ ordinary skill and care in the exercise of the particular profession. The duty imposed upon the insurance agent [the lawyer, doctor, and accountant] upon whose advice the client or patient depends is that of "reasonable diligence" a breach of which duty results in an action in negligence

*Id.* As with the *Roger* Court, the Fifth Circuit later recognized that the employment of certain professionals, such as financial advisers, implies a duty of "reasonable diligence" in the performance of the task for which the professional was employed. *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 479 (5th Cir. 2002). Apply the reasoning of both the State of Louisiana and federal courts, Defendants herein were required to perform their financial services for the State of Louisiana in keeping with the due care and in the manner required by ordinary prudent investment professionals. The State of Louisiana's pleadings, including its Second Amended Complaint for Damages, clearly allege that Defendants' advice and financial services

fell well short of this standard.

    *b.  The Second Amended Complaint alleges a Breach of Duty*

       The State of Louisiana has alleged sufficient facts to demonstrate that Defendants breached their respective duties. Again, each Defendant owed their client, the State of Louisiana, duties of loyalty, trust, disclosure of material facts and competence. Defendants clearly breached these duties when they failed to provide investment advice in the State of Louisiana's best interest and continued to participate in an antitrust conspiracy for their own benefit and at the experienced of their client, the State of Louisiana. In this regard, these investment professionals also failed to disclose materials fact concerning the pricing and marketing of GSE bonds.

       At minimum, the State of Louisiana has established that each Defendant was negligent when it purchased and sold artificially-priced securities on behalf of the State of Louisiana. The State of Louisiana's allegations and factual claims  presented throughout its pleadings are not speculative, conclusory or unwarranted deductions of fact. Rather, the State of Louisiana has pleaded specific facts giving rise to proper and valid claims of negligence based on Defendants' breach of their respective duties. Finally, the State of Louisiana maintains sufficient allegations that each Defendants' breach of its own purported guidelines and standards for rendering investment advice and services constituted an independent tort which damaged the State of Louisiana. Taking the entirety of these allegations in the light most favorable to the State of Louisiana, it presents valid negligence claims against Defendants, and their Rule 12(b)(6) motion should be denied.

                                      **RESPECTFULLY SUBMITTED,**

HAMMOND SILLS ADKINS & GUICE       THE CONNOR GROUP, LLC

/s/Alejandro R. Perkins
ALEJANDRO R. PERKINS  La. Bar No. 30288
HAMMONDS, SILLS, ADKINS & GUICE
2431 South Acadian Thruway, Suite 600
Baton Rouge, LA 70808
Telephone: 1(225)923-3462
Facsimile: 1(225)923-0315
aperkins@hamsil.com

JOHNSON & JOHNSON, P.L.L.C.

/s/Curtis D. Johnson, Jr.
CURTIS D. JOHNSON, JR.  (TN Bar No.015518)
*Admitted Pro Hac Vice*
Suite 1002, 1407 Union Avenue
Memphis, Tennessee  38104
Telephone:  (901) 725-7520
Facsimile:  (901) 725-7570
cjohnson@johnsonandjohnsonattys.com

/s/Karl Connor
KARL CONNOR La. Bar No. 23454
2218 Napoleon Avenue
New Orleans, LA  70115
Tele: (504)521-6938
karl.connor@smartcounsel.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have on this 16th day of August, 2020, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/Curtis D. Johnson, Jr.
CURTIS D. JOHNSON, JR.