UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STATE OF LOUISIANA,
By and through its,
Attorney General
JEFF LANDRY

VERSUS

BANK OF AMERICA, N.A., et al.

CIVIL ACTION

19-638-SDD-SDJ

**RULING**

In this matter before the Court is a *Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(B)(2) and 12(B)(6)*[1] filed by Defendant, Barclays Bank PLC ("BBPLC"). Plaintiff, the State of Louisiana ("Plaintiff") filed an *Opposition*,[2] to which BBPLC filed a *Reply*.[3] For the following reasons, the Court finds the *Motion* should be granted, and this action dismissed with prejudice as to BBPLC.

**I.    BACKGROUND**

Plaintiff alleges that BBPLC, both individually and through its subsidiary, Barclays Capital Investments ("BCI"), conspired to fix prices in the market for government sponsored entity ("GSE") bonds. For the purposes of this *Ruling*, "Barclays" refers to both BBPLC and BCI as well as the other members of the Barclays corporate group who are not named in this suit. The Court recently reviewed the salient details of the GSE bond market in a prior *Ruling*.[4] Plaintiff alleges that BBPLC is liable under § 1 of the Sherman

---

[1] Rec. Doc. No. 149.
[2] Rec. Doc. No. 154.
[3] Rec. Doc. No. 162.
[4] *State of Louisiana v. Bank of America, N.A., et al*, 19-CV-638-SDD-SDJ, Rec. Doc. No. 179.

65622

Act. The Court must consider BBPLC's jurisdictional objections before turning to the substantive claims.

BBPLC argues that this Court lacks personal jurisdiction over it. Plaintiff disagrees and advances three distinct bases for the Court's exercise of jurisdiction. First, BBPLC has sufficient minimum contacts to justify the exercise of specific personal jurisdiction.[5] Second, BBPLC has sufficient national contacts to justify the exercise of personal jurisdiction under Fed. R. Civ. P. 4(k)(2), and/or BCI has sufficient national contacts and those can be imputed to BBPLC under an alter ego theory.[6] And third, BCI has sufficient minimum contacts to justify the exercise of specific personal jurisdiction, and BCI is merely an alter ego of BBPLC, so BCI's contacts can be imputed to BBPLC.[7] BBPLC notes that Plaintiff relies on allegations against BCI but never properly served it.[8] The Court will address each argument in turn.

## II. LAW AND ANALYSIS

### A. Personal Jurisdiction Based on BBPLC's Contacts

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if: (1) the long-arm statute of the forum state enables personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause. The due process and long-arm statute inquiries merge because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause.[9]

---

[5] Rec. Doc. No. 154-1, p. 2.
[6] *Id*.
[7] *Id*.
[8] Rec. Doc. No. 162, p. 1–2.
[9] *Petroleum Helicopters, Inc. v. Avco Corporation*, 834 F.2d 510, 512 (5th Cir.1987).

65622

A court may exercise specific jurisdiction[10] in conformity with due process "in a suit arising out of or related to the defendant's contacts with the forum"[11] when the "'non-resident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"[12] The Fifth Circuit follows a three-step analysis for specific personal jurisdiction. First, a court must determine "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[13] The non-resident's "'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state."[14] Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[15] Third, "[e]ven if minimum contacts exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends traditional notions of fair play and substantial justice."[16]

"When a non-resident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the non-resident."[17] When a district court rules on a motion to dismiss without an evidentiary

---

[10] Plaintiff does not allege general jurisdiction.
[11] *Luv N' Care, Ltd., v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).
[12] *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir.2008)).
[13] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).
[14] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 ("This 'purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.") (citations omitted); *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 588 (5th Cir. 2014).
[15] *Seiferth*, 472 F.3d at 271.
[16] *Ruston Gas Turbines*, 9 F.3d at 421 (internal citations omitted).
[17] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

65622

hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction.[18] At this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiff's favor.[19] To aid resolution of the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery . . . . But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[20]

Plaintiff—who bears the burden of establishing jurisdiction—argues that the Court has specific jurisdiction over BBPLC based on BBPLC's own contacts with Louisiana.[21] In support, Plaintiff alleges that BBPLC maintains an office and registered agent in this state; "did business in the state"; owns or partially owns companies that have done business in the state; and has entered into unrelated securities and mortgage loan transactions in the state.[22] BBPLC attached as an exhibit to its *Motion* the affidavit of Stephen Shapiro, BBPLC's Company Secretary, who attests that BBPLC has no operating branches in Louisiana and "did not underwrite, purchase or sell securities issued by U.S. government-sponsored entities in or to the State of Louisiana between 2009 and 2016."[23] Plaintiff does not controvert the affidavit.

---

[18] *Trinity Indus., Inc. v. Myers & Assoc., Ltd*., 41 F.3d 229, 230 (5th Cir. 1995).
[19] *D.J. Inv., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc*., 754 F.2d 542, 546 (5th Cir. 1985).
[20] *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co*., 517 F.3d 235, 241–42 (5th Cir. 2008) (holding that the district court erred in requiring a plaintiff to establish more than a *prima facie* case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).
[21] Rec. Doc. No. 154-1, p. 2.
[22] Rec. Doc. No. 130; Rec. Doc. No. 154-1, p. 4–5.
[23] Rec. Doc. No. 149-2, p. 2.

65622

Even accepting the dubious proposition that Plaintiff has sufficiently alleged minimum contacts, Plaintiff has not established that the Court has specific personal jurisdiction over BBPLC under this theory because Plaintiff has not alleged that its cause of action arises out of BBPLC's contacts with Louisiana. The closest thing to an allegation that BBPLC transacted with Louisiana in the GSE bond market is "Barclays Bank PLC has specifically sold securities to the State of Louisiana and engaged in the sale of FNMA[,] FHLMC[,] or FHLB[,] securities in the State of Louisiana."[24] Plaintiff does not allege that the named securities were price fixed, that the securities are the ones at issue in this case, or even when the securities were purchased.[25] On the other hand, Shapiro's uncontroverted affidavit states unequivocally that BBPLC had no GSE bond transactions with the State of Louisiana during the relevant time period.[26] Because BBPLC has disputed the factual grounds for personal jurisdiction, the Court may consider the record before it including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[27]

Shapiro's uncontroverted affidavit establishes that BBPLC had no GSE bond transactions with Plaintiff during the relevant period. Plaintiff offers nothing more than restatements of its vague allegations in the *Second Amended Complaint* to suggest otherwise. Plaintiff has failed to establish that its cause of action for the alleged price fixing

---

[24] Rec. Doc. No. 130, p. 11.
[25] Plaintiff does allege that it transacted in the GSE bond market with "Barclays" from July 1, 2010 to June 30, 2011 and from July 1, 2012 to June 30, 2013. Rec. Doc. No. 130, p. 80–83. It is unclear which Barclays defendant the allegation refers to. On page 52 of the *Second Amended Complaint*, Plaintiff provides a chatroom transcript labeled as applicable to defendant "Barclays" that alleges what a BCI trader did. Subsequently, Plaintiff refers twice to "Barclays PLC." *Id*. at 78, 79. Therefore, it appears that "Barclays" refers to BCI. In any event, the uncontroverted Shapiro affidavit refutes any purported allegation that BBPLC transacted in the GSE bond market with Plaintiff.
[26] Rec. Doc. No. 149-2, p. 2.
[27] *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002).

65622

of GSE bonds arises out of BBPLC's forum contacts, so BBPLC's contacts cannot form the basis of the Court's exercise of jurisdiction.

### B. Personal Jurisdiction Based on BCI's Contacts

Plaintiff argues that the Court can impute BCI's contacts to BBPLC for jurisdictional purposes. Generally, "the proper exercise of personal jurisdiction over a non-resident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated."[28] "[T]he presumption of institutional independence of related corporate entities may be rebutted by 'clear evidence,' which requires a showing of 'something beyond' the mere existence of a corporate relationship between a resident and non-resident entity to warrant the exercise of jurisdiction over the non-resident."[29] Courts use the *Hargrave* factors to determine whether the plaintiff has overcome the presumption of corporate separateness:

> (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities.[30]

The Fifth Circuit has noted that "the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos, even where other factors support an alter ego relationship."[31] "[I]t is well-settled that where. . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent."[32]

---

[28] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004).
[29] *Id*. (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir.1999)).
[30] *Dickson Marine Inc.*, 179 F.3d at 339 (5th Cir. 1999) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir.1983).
[31] *Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 251 (5th Cir. 2019) (internal citations omitted).
[32] *Southmark Corp. v. Life Inv'rs, Inc.*, 851 F.2d 763, 773–74 (5th Cir. 1988).

The parties agree that the *Hargrave* factors control the analysis. Plaintiff alleges in support of its alter ego theory of jurisdiction that BBPLC: owns the entirety of BCI through two holding companies, can install BCI's officers, and controls BCI's board of directors.[33] Plaintiff relies heavily on the terms of the U.S. Resolution Plan ("the Plan") that Barclays executed in order to comply with the Dodd Frank Act and urges the Court to consider it.[34] Plaintiff contends that the Plan demonstrates BBPLC's complete control over its subsidiary BCI such that the imputation of BCI's contacts is appropriate.[35]

The Court can consider the Plan because it is incorporated into the complaint by reference, but Plaintiff actually cites to two iterations of Barclays's U.S. Resolution Plan—the 2013 version and the 2018 version.[36] Notably, each of the purported admissions by BBPLC as to its degree of control over BCI is within the 2018 Plan, which is outside the relevant time period for this suit.[37] Only one relevant allegation is contained in the 2013 Plan, which is that BCI is a subsidiary of BBPLC.[38] While the parties do not raise the issue, the Court rejects Plaintiff's position that the 2018 Plan is germane to the degree of control for a prior time period, namely 2009 to 2016, the relevant time period here.[39] Since Plaintiff alleges that the Court has specific jurisdiction over BBPLC because of BCI's

---

[33] Rec. Doc. 130, p. 12–14. Plaintiff asserts in its Opposition that Barclays and BCI share an office in New York and at least one officer. Rec. Doc. No. 154-1, p. 19. The Court cannot consider these allegations because "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." See *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (collecting cases)).
[34] *Id*. Rec. Doc. No. 154-1, p. 19.
[35] *Id*. at 10–19.
[36] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[37] Compare Rec. Doc. No. 154-1, p. 13–14 with Barclays 2018 US. Resolution Plan, p. 15, 9, 14, 12. https://www.fdic.gov/regulations/reform/resplans/plans/barclays-165-1807.pdf
[38] Barclays 2013 U.S. Resolution Plan p. 7 available at https://www.federalreserve.gov/bankinforeg/resolution-plans/barclays-plc-1g-20131001.pdf
[39] If the Court were to accept this argument, then the corollary would be that a party could relinquish control of an entity in order to defeat an imputation of contacts theory after the acts giving rise to suit had occurred.

contacts, the focus is on the contacts and necessarily the time period when they occurred. But the Court need not answer this question. Even if the Court considers the 2018 Plan relevant to the imputation of contacts question, Plaintiff has still failed to rebut the presumption of corporate independence.

Plaintiff attaches primary importance to the following statement from the 2018 Plan:

> Barclays' US-Specific Resolution Strategy to meet requirements of Section 165(d) of the Dodd-Frank Act is a SPOE Strategy. Under the US-Specific Resolution Strategy only the US IHC would enter bankruptcy. Our US BrokerDealer will undergo a solvent wind down, our US IDI will be sold, and our New York Branch will remain outside of insolvency proceedings and may be placed under heightened supervision by its state regulator.[40]

Plaintiff argues that this statement is indicative of BBPLC's total control over BCI because BBPLC can "cause [BCI] to wind down its activities without filing bankruptcy, effectively demonstrating that it can control its day to day business and cause it to cease to exist."[41]

BBPLC counters that the above statement is reflective of BCI's commitment to the federal government to wind down in the event of financial distress.[42] The use of the word "Barclays" in the statement is instructive. The 2018 Plan defines "Barclays" as "Barclays PLC together with its subsidiaries and/or Barclays Bank PLC together with its subsidiaries."[43] In other words, the above statement is a commitment by all of the Barclays entities to agree to a wind down—not an admission by BBPLC that it can cause BCI to wind down. Plaintiff's reliance on this statement is misplaced.

---

[40] Rec. Doc. No. 154-1, p. 13.
[41] Rec. Doc. No. 154-1, p. 16.
[42] Rec. Doc. No 162, p. 6–7.
[43] Barclays 2018 U.S. Resolution Plan, p. 5 n. 1.

65622

Shapiro's affidavit sounds the death knell of Plaintiff's imputation of contacts argument. Shapiro attests that "[BBPLC] is a separate and distinct legal entity from (a) Barclay Capital Inc.…[i]t keeps its own books and records, has its own officers and directors, and properly observes corporate forms and formalities according to the laws under which it is organized."[44]

Application of the *Hargrave* factors compels the conclusion that the Court cannot impute BCI's contacts to BBPLC. Plaintiff alleges that BBPLC indirectly owns all of BCI's stock which weighs in favor of imputation. Shapiro's affidavit establishes that the corporations have different officers and directors.[45] And, while Plaintiff alleges that BCI is headquartered in New York,[46] Shapiro's affidavit establishes that BBPLC is headquartered in England.[47] To the extent Plaintiff alleges corporate formalities are not observed, Shapiro's affidavit expressly refutes that contention.[48] To the extent Plaintiff alleges joint accounting systems, Shapiro attests that the corporations "keep [their] own books and records."[49] Finally, Plaintiff's only non-conclusory allegation as to the "complete control over the subsidiary's general policies or daily activities" prong is the above statement from the 2018 Plan. The Court agrees with BBPLC's characterization of the statement insofar as it is not admission of complete control by BBPLC. Rather, the statement indicates an agreement between the Barclay's family of companies and the federal government. Especially since the Fifth Circuit has placed a thumb on the scale in

---

[44] Rec. Doc. 149-2, p. 2–3.
[45] Rec. Doc. No. 149-2, p. 2.
[46] Rec. doc. No. 130, p. 11.
[47] Rec. Doc. No. 149-2, p. 1.
[48] *Id*. at 2.
[49] *Id*. at 2–3

favor of not imputing contacts where corporate formalities are observed,[50] Plaintiff has fallen far short of alleging "clear evidence" of "something beyond" the existence of a corporate relationship. As such, the Court will not impute BCI's contacts to BBPLC.

### C. Nationwide Personal Jurisdiction under Fed. R. Civ. P. 4(k)(2)

Plaintiff appears to argue that the Court may exercise specific nationwide jurisdiction over BBPLC under Fed. R. Civ. P. 4(k)(2).[51] While the briefing is less than clear, Plaintiff seems to argue that BBPLC is subject to the Court's jurisdiction both on the basis of its own contacts[52] and those of BCI which can be imputed to it. Since the Court has already concluded that it BCI's contacts are not imputable to BBPLC, the Court need only consider the first argument.

Rule 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Rule 4(k)(2) provides for "personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a

---

[50] *Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 251 (5th Cir. 2019); "[I]t is well-settled that where. . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent." *Southmark Corp. v. Life Inv'rs, Inc.*, 851 F.2d 763, 773 (5th Cir. 1988).
[51] Rec. Doc. No. 154-1, p. 6–8. The *Opposition* states:

> The Plaintiff has filed a Sherman Act claim against the Defendant, BCI, which is being plead in the Second Amended Complaint as the alter ego of the Defendant, BBPLC. Therefore, if the Plaintiff has stated a claim that this is an alter ego corporation, therefore, specific jurisdiction exists for the claim against BBPLC due to the federal question of an anti-trust violation under the Sherman Act. *World Tanker* at 721. The question of whether BCI is an alter ego of BBPC and thus whether vicarious liability exists is discussed in full below.

[52] "BBPLC has national contacts and as such is subject to jurisdiction in the State of Louisiana pursuant to F.R.C.P. 4(k)(2) pursuant to Fifth Circuit precedent in World Tanker Carriers Corp. v. MV Ya Mawlaya, 99 F.3d 717, 720 (5th Cir. 1996)." Rec. Doc. No. 154-1, p. 2.

whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state."[53] "The due process required in federal cases governed by Rule 4(k)(2) is measured with reference to the Fifth Amendment, rather than the Fourteenth Amendment."[54]

In this case, there is no dispute that Plaintiff's Sherman Act claim arises under federal law, and neither side has claimed that BBPLC is subject to the jurisdiction of the courts of any state. Therefore, the only issue is whether the exercise of jurisdiction is "consistent with the Constitution and laws of the United States."[55] Courts use the "now familiar minimum contacts analysis to determine whether the assertion of personal jurisdiction would offend traditional notions of fair play and substantial justice."[56] The Court must consider BBPLC's contacts with the United States as a whole, rather than just the forum state.[57]

Plaintiff's argument on this point is cursory at best and based on the conclusory allegation that "BBPLC has national contacts and as such is subject to jurisdiction in the State of Louisiana pursuant to F.R.C.P. 4(k)(2) pursuant to Fifth Circuit precedent in *World Tanker Carriers Corp. v. MV Ya Mawlaya*…."[58] However, while Plaintiff focuses almost entirely on its alter ego theory of imputation of contacts, there are some relevant allegations related to BBPLC's nationwide contacts.

---

[53] *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir.1996)).
[54] *Id.* (quoting *Submersible Sys., Inc. v. Perforadora Central, S.A.*, 249 F.3d 413, 420 (5th Cir.2001)).
[55] *Id.* (quoting Fed. R. Civ. P. 4(k)(2)).
[56] *Id.* (quoting *World Tanker Carriers Corp.*, 99 F.3d at 723).
[57] *Id.*
[58] Rec. Doc. No. 154-1, p. 2.

Plaintiff alleges that BBPLC: maintains a website accessible to those in the United States,[59] created holding companies and a subsidiary, BCI, in the United States,[60] entered into unrelated securities and mortgage loan transactions in Louisiana,[61] and in some fashion does business in the United States as a component of the larger Barclays corporate group as evidenced in the U.S. Resolution Plans.

Plaintiff does not allege that the Court has general jurisdiction over BBPLC under a nationwide contacts theory. As such, Plaintiff must make a prima facie showing that its Sherman Act claim arises out of BBPLC's specific contacts with the United States.[62] The problem with this theory is the same that dooms Plaintiff's case against BBPLC: at core, Plaintiff attempts to hold BBPLC liable for the actions of its subsidiary BCI, who Plaintiff named but did not serve.[63] To be sure, BBPLC's purported decision as part of the broader Barclays group to establish a U.S based subsidiary (BCI) is a "contact" for jurisdictional purposes. However, once incorporated, BCI took on a separate legal existence, and an attempt to tie the creation of a corporate subsidiary to that subsidiary's later actions ignores the subsidiary's legal independence. In short, were the Court to conclude that Plaintiff's cause of action arises out of BBPLC's creation of BCI, the Court would merely be imputing contacts via a backdoor. This would disregard the fundamental principles that give contour to the corporate personality. Plaintiff's allegations related to BBPLC's other contacts are insufficient for the reasons stated above.

---

[59] Rec. Doc. No. 130, p. 12.
[60] *Id*. at 13.
[61] Rec. Doc. No. 154-1, pp. 4–5.
[62] *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345 (5th Cir. 2002).
[63] Rec. Doc. No. 149-1, p. 8; See Rec. Doc. No. 45-1 which shows that BBPLC was served but does not indicate that service was properly made on BCI.

### III.   CONCLUSION

For the foregoing reasons, BBPLC's *Motion*[64] is GRANTED as to its 12(b)(2) arguments. The 12(b)(6) component of that *Motion*[65] is DENIED as moot. Plaintiff has now had three opportunities to amend its *Complaint*. As such, Plaintiff's action against BBPLC is dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 31, 2021.

*[signature]*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[64] Rec. Doc. No. 149.
[65] *Id.*