# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

STATE OF LOUISIANA,
By and through its,
Attorney General
JEFF LANDRY

VERSUS

BANK OF AMERICA, N.A., et al.

CIVIL ACTION

19-638-SDD-SDJ

## RULING

In this matter before the Court are a *Motion to Dismiss*[1] filed by Defendant, Robert W. Baird & Co. ("Baird") and a *Motion to Dismiss*[2] filed by Defendant, Hilltop Securities, Inc. ("Hilltop"). Plaintiff, the State of Louisiana ("Plaintiff") filed an *Opposition* to each *Motion*,[3] to which Baird and Hilltop each filed *Replies*.[4] For the following reasons, the Court finds that Baird's *Motion* and Hilltop's *Motion* should be granted, and this action dismissed with prejudice as to both of them.

## I.    BACKGROUND

The Court recently reviewed the salient details of the government sponsored entity ("GSE") bond market in a prior *Ruling*.[5] Plaintiff previously asserted Sherman Act claims against Baird and Hilltop.[6] In its *Oppositions*, Plaintiff argues that it has withdrawn its Sherman Act claims against Hilltop and Baird.[7] As such, the portions of Baird and Hilltop's

---

[1] Rec. Doc. No. 150.
[2] Rec. Doc. No. 143.
[3] Rec. Doc. No. 153, as to Hilltop; Rec. Doc. No. 157, as to Baird.
[4] Rec. Doc. No. 159, as to Hilltop; Rec. Doc. No. 163, as to Baird.
[5] *State of Louisiana v. Bank of America, N.A., et al*, 19-CV-638-SDD-SDJ, Rec. Doc. No. 179.
[6] See Rec. Doc. No. 1, Plaintiff's *Complaint*, asserting only Sherman Act claims and naming Baird and Hilltop as defendants.
[7] Rec. Doc. No. 153-1, p. 2; Rec. Doc. No. 157-1, p. 2.

65162

*Motions* seeking to dismiss Plaintiff's Sherman Act claims are denied as moot, and Plaintiff's Sherman Act claims against Baird and Hilltop are dismissed with prejudice.

Plaintiff alleges that Hilltop and Baird acted negligently in selling and buying price fixed GSE bonds to and from Plaintiff.[8] Plaintiff alleges that Baird and Hilltop owed a duty to ensure that the investments they offered were suitable for Plaintiff and a duty to exercise reasonable care in recommending investments to Plaintiff.[9] Plaintiff avers that it relied on Baird's and Hilltop's representations of their skill and experience when Plaintiff "awarded them contracts to sell securities to the State of Louisiana."[10] Plaintiff argues that Baird and Hilltop breached their duties by selling Plaintiff bonds at prices that had been artificially inflated.[11] Moreover, Plaintiff avers that Baird and Hilltop should have known that the prices were artificially inflated, and their failure to recognize this fact and avoid selling the bonds at inflated prices to Plaintiff was a breach of Baird's and Hilltop's duties to exercise reasonable care.[12] Plaintiff also alleges that Hilltop and Baird violated the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") in various ways.[13]

## II.    LAW AND ANALYSIS

### A.  Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[14] The Court

---

[8] Rec. Doc. No. 130, pp. 85–90.
[9] *Id*. at 87.
[10] *Id*. at 89.
[11] *Id*.
[12] *Id*.
[13] *Id*. at 90–98.
[14] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[15] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[16]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[17] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[18] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[20] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[21] "[O]n a motion to dismiss,

---

[15] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equity, Inc.*, 540 F. 3d 333, 338 (5th Cir. 2008).

[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").

[19] *Id.*

[20] *Id.*

[21] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[22]

### B. Negligence Claims

Plaintiff must allege five elements to state a claim for negligence:

(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).[23] . . . A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability.[24]

Plaintiff asserts that Baird's and Hilltop's alleged capacities as brokers created fiduciary duties to Plaintiff.[25] Plaintiff also alleges that Baird's and Hilltop's alleged capacities as financial advisors created duties to Plaintiff.[26] Finally, Plaintiff alleges that Financial Industry Regulatory Authority ("FINRA") regulations created duties to Plaintiff.[27] Plaintiff asserts that Baird and Hilltop had the duties to: "ensure that the investments that they offered or brokered were suitable for the Plaintiffs [sic] as a client," "avoid unreasonable behavior which puts a client at risk of financial harm," "use reasonable care in recommending investments to the Plaintiffs [sic]," and "avoid recommending investments which it knew or should have known would constitute a fraud or scam."[28]

---

[22] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[23] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)).
[24] *Id.* (citing *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 321 (La. 1994)).
[25] Rec. Doc. No. 157-1, pp. 6–7; Rec. Doc. No. 153-1, p. 7
[26] Rec. Doc. No. 157-1, pp. 7–8; Rec. Doc. 153-1, p. 8.
[27] Rec. Doc. No. 157-1, pp. 5–6; Rec. Doc. No. 153-1, pp. 6–7.
[28] Rec. Doc. No. 157-1, pp. 5–6; Rec. Doc. No. 153-1, pp. 6–7.

Plaintiff relies on *Beckstrom v. Parnell*,[29] a 1998 Louisiana Fifth Circuit Court of Appeal case, and *Romano v. Merrill Lynch, Pierce, Fenner & Smith*,[30] a United States Fifth Circuit Court of Appeal case from 1987, in support of its assertion that Baird's and Hilltop's statuses as brokers gave rise to a duty to Plaintiff. The *Beckstrom* court noted that, "[a]s a general rule, a broker has a duty to give a full and fair disclosure. However, depending on the customer-broker relationship, the nature of the transaction, and the sophistication of the consumer, the duty can change."[31] The *Romano* court held in similar fashion, noting that "a broker does owe his client a fiduciary duty," but "[i]t is clear that the nature of the fiduciary duty owed will vary, depending on the relationship between the broker and the investor."[32] The court further noted that the discretionary or nondiscretionary nature of the account is a factor, as is the allocation of the control over the account.[33]

In a subsequent case, *Matter of Life Partners Holdings*, the Fifth Circuit noted that "the duty owed is contingent on the nature of the fiduciary relationship, [so] the plaintiff must plead some facts as to the nature of the relationship to state a plausible claim that [] a fiduciary duty has been breached."[34] The court favorably quoted an Eleventh Circuit case for the proposition that "the duty to disclose information about risk will vary depending on the circumstances and nature of the relationship."[35]

---

[29] 730 So. 2d. 942 (La. App. 1 Cir. 11/6/98).
[30] 834 F.2d 523 (5th Cir. 1987).
[31] *Beckstrom*, 730 So. 2d. at 948.
[32] *Romano*, 834 F. 2d at 530.
[33] *Id*.
[34] *Matter of Life Partners Holdings, Inc*., 926 F.3d 103, 125 (5th Cir. 2019).
[35] *Id*. (quoting *Clayton Brokerage Co. v. Commodity Futures Trading Comm'n*, 794 F.2d 573, 582 (11th Cir. 1986)).

Applying the above precepts, the Fifth Circuit affirmed the district court's dismissal under 12(b)(6). The court noted:

> The third amended complaint does not contain any allegations regarding the relationship between any specific Licensee and any specific investor. Importantly, it does not state facts regarding "the degree of trust" placed in the Licensee or "the intelligence and personality" of the investor, so the nature of the fiduciary duty owed cannot be ascertained from the pleadings. As a result, the third amended complaint does not provide sufficient facts to allege that any fiduciary duty has been breached by any individual Licensee.[36]

Plaintiff alleges that Hilltop and Baird "entered into contracts with the State of Louisiana to broker the purchaser of [GSE bonds]…"[37] Plaintiff further asserts that "Louisiana entered into contracts to purchase [GSE bonds] based upon the recommendations from … [Baird and Hilltop]" and that Baird and Hilltop acted as brokers for those transactions.[38] Plaintiff alleges that it "relied upon the skill and expertise claimed by [Baird and Hilltop] in the selection of the securities purchased in transactions brokered by these companies."[39]

As in *Matter of Life Partner Holdings*, Plaintiff has failed to allege facts regarding the "degree of trust" placed in Baird and Hilltop and the "intelligence and personality" of the investor.[40] Plaintiff has also failed to allege whether the accounts that it held with Baird and Hilltop were discretionary or nondiscretionary. Rather, Plaintiff alleges that it acted on Hilltop's and Baird's "recommendations," which suggests that Baird and Hilltop merely offered advice. Somewhat contradictorily, Plaintiff seems to argue that Baird and Hilltop "selected" the securities, but it is unclear whether the allegation is that they selected the

---

[36] *Id*.
[37] Rec. Doc. No. 130, p. 86.
[38] *Id*. at 87
[39] *Id*. at 89.
[40] *Matter of Life Partners Holdings, Inc*., 926 F.3d at 125.

securities to recommend or bought them on Plaintiff's behalf, as would occur with a nondiscretionary account. While Plaintiff alleges that it contracted with Baird and Hilltop for them to broker the purchase of bonds for Plaintiff, the terms of those contracts are absent from the *Second Amended Complaint*. In sum, in considering Plaintiff's allegations as to its relationships with Baird and Hilltop, the Court is unable to determine what degree of control any party exercised in the transactions or over the accounts. *Romano* and *Matter of Life Partner Holdings* mandate that Plaintiff's allegations in the *Second Amended Complaint* are insufficient to allege the nature of the fiduciary duty owed.

Plaintiff also asserts that both the Louisiana Supreme Court's decision in *Roger v. Dufrene*[41] and the Fifth Circuit's decision in *Copeland v. Wasserstein, Perella & Co., Inc.*[42] support the principle that a duty of "reasonable diligence" exists for financial advisors.[43] *Rogers*, since it concerns the duties of an insurance agent, does not support that proposition, but *Copeland* does. The *Copeland* court had to determine whether the plaintiff's cause of action against his financial advisor arose in contract or tort for prescription purposes.[44] *Copeland* cited *Rogers* for the proposition that certain professionals only promise to "employ ordinary skill and care in the exercise of the particular profession" and included financial advisors in that category.[45] In other words, *Copeland* stands for the unsurprising principle that financial advisors must advise their clients "in accordance with the standard of care among financial advisors."[46]

---

[41] 613 So.2d 947 (La. 1993).
[42] 278 F.3d 472 (5th Cir. 2002).
[43] Rec. Doc. No. 153-1, p. 8; Rec. Doc. No. 157-1, pp. 7–8.
[44] *Copeland*, 278 F.3d at 479.
[45] *Id*.
[46] *Id*.

Plaintiff's scant pleading dooms this theory as well. Plaintiff does not allege that Baird or Hilltop acted as financial advisors. Beyond the vague and conclusory allegations that Baird and Hilltop "recommended" or "selected" bonds for Plaintiff, there is no indication that Baird or Hilltop did anything more than broker the transactions. In sum, Plaintiff's word choice, and inconsistent word choice at that, is the only allegation supporting the notion that Baird and Hilltop acted as financial advisors. Plaintiff's *Second Amended Complaint* is devoid of substantive factual allegations that satisfy the plausibility standard consistent with its argument that Baird and Hilltop acted as financial advisors, a claim made for the first time in its *Opposition*.

Finally, Plaintiff asserts that several FINRA regulations create the aforementioned duties to Plaintiff. Plaintiff argues that FINRA requires its members to disclose material information about investments to investors, to only recommend "suitable" investments to customers, and to provide the customer with the most favorable price under prevailing market conditions.[47] However, these arguments alone do not persuade the Court that FINRA regulations give rise to a duty to Plaintiff, and Plaintiff provides no authority to support such a claim.[48] Baird cites to persuasive authority that find that FINRA regulations do not give rise to such a duty.[49] Hilltop reiterates its arguments that it did not breach, even if it did have a duty to Plaintiff.

Courts have generally held that the violation of a FINRA or NASD[50] rule does not create a private right of action because to do so would go against Congress's intent when

---

[47] Rec. Doc. 157-1, pp. 5–7; Rec. Doc. No. 153-1, pp. 5–7.
[48] Rec. Doc. 157-1, pp. 5–7; Rec. Doc. No. 153-1, pp. 5–7.
[49] Rec. Doc. No. 163, p. 3; Rec. Doc. No. 159, pp. 2–4.
[50] National Association of Securities Dealers and FINRA's predecessor. *In re Enron Corp. Sec.*, *Derivative & "ERISA" Litig., No.* 1446, 2016 WL 4095973, at *14 (S.D. Tex. Aug. 2, 2016), *aff'd sub nom. Giancarlo v. UBS Fin. Servs., Inc.*, 725 F. App'x 278 (5th Cir. 2018).

passing the Securities Exchange Act.[51] When presented with an opportunity to confront this issue, the Fifth Circuit explicitly declined to rule, but instead stated that the rules could be evidence of the broker's standard of care.[52]

Assuming Plaintiff has sufficiently alleged a duty, the Court finds that Plaintiff has failed to allege a breach of any duty. Plaintiff's arguments as to Baird and Hilltop are identical in part because the breach section of the *Second Amended Complaint* uses the blanket term "defendants" with no differentiation.[53] According to Plaintiff, Baird and Hilltop breached when they: (1) "failed to provide investment advice in the State of Louisiana's best interest"; (2) "continued to participate in an antitrust conspiracy for their own benefit and at the experienced [sic] of [Louisiana]"; (3) "failed to disclose material facts concerning the pricing and marketing of GSE bonds"; (4) "purchased and sold artificially priced securities on behalf of the State of Louisiana"; and (5) "breach[ed their] own purported guidelines and standards for rendering investment advice and services…"[54]

Plaintiff's first argument fails. This argument is predicated on the allegation that the bonds could not be in Plaintiff's best interest because they were price fixed. But Plaintiff has not alleged that Baird or Hilltop knew that the bonds were price fixed. While Plaintiff has alleged that Baird and Hilltop should have known that the bonds were price fixed, there are no allegations supporting that conclusory assertion. On the contrary, Plaintiff argues that the conspiracy "was inherently self-concealing" and avers that it could not have discovered the price fixing until June 2018.[55] Plaintiff provides no explanation for

---

[51] See *Brink v. Raymond James & Assocs., Inc.*, 341 F. Supp. 3d 1314, 1324–26 (S.D. Fla. 2018) (collecting cases).
[52] *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 333 (5th Cir. 1981), *abrogated on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).
[53] Rec. Doc. No. 157-1, pp. 8–9; Rec. Doc. No. 153-1, pp. 8–9.
[54] Rec. Doc. No. 157-1, pp. 8–9; Rec. Doc. No. 153-1, pp. 8–9.
[55] Rec. Doc. No. 130, p. 92.

why it could not discover the conspiracy, but Baird and Hilltop could. On these facts, the only way that Baird and Hilltop could have conformed to the purported duty is by investigating and discovering alleged price fixing. Plaintiff cites no authority that supports a duty to investigate and discover price fixing. Thus, Plaintiff's fourth argument also fails.

Plaintiff's second and third points can be dispensed with quickly. Plaintiff does not argue, and no facts are alleged in the *Second Amended Complaint*, that Baird or Hilltop participated in the alleged conspiracy.[56] Furthermore, there are no allegations that Baird and Hilltop knew about the alleged conspiracy. As such, they could not have breached by failing to disclose a fact they are not alleged to have known.

Finally, Plaintiff argues that Baird and Hilltop "breach[ed their] own purported guidelines and standards for rendering investment advice and services…"[57] However, Plaintiff only obliquely alleges the content of those guidelines or standards. Plaintiff alleges that Hilltop authored a presentation wherein it purported "to provide expert financial guidance…"[58] However, that presentation was authored in April of 2017,[59] making it entirely irrelevant to the events giving rise to this suit, which allegedly occurred between 2009 and 2016.[60] Therefore, Plaintiff has failed to allege the content of Hilltop's "guidelines and standards" during the relevant time period, and it follows then that Plaintiff has not alleged a breach thereof.

Plaintiff's allegations as to Baird's "guidelines and standards" are limited to the following quotation from Baird's website:

---

[56] Rec. Doc. No. 157-1, p. 2; Rec. Doc. No 153-1, p. 2.
[57] Rec. Doc. No. 157-1, p. 7; Rec. Doc. No. 153-1, p. 8.
[58] Rec. Doc. No. 130, p. 89.
[59] *Id*. at n. 39.
[60] *Id*. at p. 2.

As a workplace of choice for the financial industry, Baird has attracted top talent to serve clients of our private wealth management, asset management, fixed income sales and trading, public finance, investment banking, equity sales, trading and research and private equity businesses, including: Seasoned senior leaders with an average 20-year tenure at Baird[;] Equity research analysts recognized among the best in our industry[;] Investment strategists and in-house financial planning specialists frequently sought by national media for insight[;] [a]n international network of industry experts with firsthand experience and perspective in key global markets.[61]

Plaintiff does not allege when Baird made the above representations on its website. The lack of a temporal allegation is by itself fatal to this breach theory because Plaintiff has not alleged that these were the "guidelines or standards" during the relevant time period.[62] Lacking an allegation as to the content of the guidelines or standards during the relevant time period, Plaintiff fails to cross the threshold of plausibility

For the foregoing reasons, Plaintiff has failed to allege a negligence claim and that claim is dismissed.

### C. LUTPA Claims

Plaintiff's LUTPA claims cannot survive Hilltop and Baird's *Motions*. The LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."[63] "Louisiana has left the determination of what is an 'unfair trade practice' largely to the courts to decide on a case-by-case basis."[64] "The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct 'offends established public policy and ... is immoral, unethical, oppressive,

---

[61] Id. at pp. 88–89.

[62] See *Siragusa v. Arnold*, 2014 WL 3512988, at *5 (N.D. Tex. July 16, 2014) (holding in part that where the plaintiff failed to allege when the defendant made the misrepresentation, the plaintiff had failed to state a claim for misrepresentation).

[63] La. R.S. § 51:1405(A).

[64] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So.3d 1053, 1059 (La. 2010) ("It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition.").

unscrupulous, or substantially injurious.'"[65] The Louisiana Supreme Court has explained

that "the range of prohibited practices under LUTPA is extremely narrow."[66] Further, the

United States Court of Appeals for the Fifth Circuit has held that "the statute does not

provide an alternate remedy for simple breaches of contract. There is a great deal of

daylight between a breach of contract claim and the egregious behavior the statute

proscribes."[67]

> The LUTPA contains an exception for:
>
> Any federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, the commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices.[68]

Baird argues that this exception applies because it is licensed by the Louisiana Office of

Financial Institutions.[69] Baird buttresses this argument by quoting the *Second Amended*

*Complaint* which states that "Baird is a registered broker-dealer" that is "licensed to do

business in all 50 states."[70] Plaintiff argues that the exception does not apply because

Baird is regulated by FINRA.[71] Plaintiff does not rebut that Baird is not licensed with the

Office of Financial Institutions, and as such, has conceded that argument.[72] Instead,

---

[65] *Cheramie*, 35 So.3d at 1059 (citations omitted).
[66] *Id.* at 1060.
[67] *Turner*, 989 F.2d at 1422.
[68] La. R.S. § 51:1406(1).
[69] Rec. Doc. No. 163, pp. 5–6.
[70] *Id*; Rec. Doc. No. 130, p. 26.
[71] Rec. Doc. No. 157-1, p. 9.
[72] *Dipietro v. Cole*, 2017 WL 5349492, at *3 (M.D. La. Nov. 13, 2017); *Omega Hosp., LLC v. United Healthcare Servs., Inc.*, 345 F. Supp. 3d 712, 740 (M.D. La. 2018).

Plaintiff relies on *Grant v. Houser*, a case from the Eastern District of Louisiana, for its argument that because Baird is regulated by FINRA, the exception does not apply.[73]

In *Grant*, the court considered one of the defendant's arguments that because it was registered with FINRA, it was exempt from the LUTPA.[74] The court concluded that FINRA registration was not a ground for the exception in La. R.S. § 51:1406(1) so the exception did not apply.[75] The court did not conclude, however, that FINRA registration negates the exception, which is what Plaintiff asks this Court to hold.[76]

There is nothing in the exception to the LUTPA provided by La. R.S. § 51:1406(1) that excludes FINRA-regulated entities from its scope. In contrast, § 51:1406(1) contains broad language excluding from the LUTPA's application "[a]ny federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries…." Therefore, because Baird is licensed by the Office of Financial Institutions, it is exempt from the LUTPA.

This result accords with the purpose behind the exception, which is to "'avoid duplication and exclude financial institutions which are regulated by other authorities as to unfair or deceptive trade practices.'"[77] Baird's registration with the Louisiana Office of Financial Institutions places it under that Office's jurisdiction. Plaintiff's LUTPA claim against Baird is dismissed with prejudice.

Hilltop tacks a different course, arguing that Plaintiff's LUTPA claim is subject to the heightened pleading standard of Rule 9(b), and that Plaintiff has failed to meet that

---

[73] Rec. Doc. No. 157-1, p. 9.
[74] *Grant v. Houser*, 2013 WL 2631433, at *4 (E.D. La. June 11, 2013).
[75] *Id*. at *4–5.
[76] *Id*. at *4–5.
[77] *Mariche v. Wells Fargo Bank, N.A.*, No. CIV.A. 11-1191, 2012 WL 1057626, at *2 (E.D. La. Mar. 28, 2012) (citing *Carriere v. Proponent Federal Credit Union*, 2004 WL 1638250 at *7 (W.D. La. July 12, 2004)).

standard.[78] Because "Rule 9(b) applies ... to all averments of fraud, whether they are part of a claim of fraud or not,"[79] when a plaintiff's LUTPA cause of action includes allegations of fraud, the plaintiff must comply with the Rule's heightened pleading standards.[80]

Plaintiff argues that Hilltop was "engaged in repeated and ongoing acts of fraud, misrepresentation, deception, and a variety of other forms unethical conduct, including, but not limited to, their deceptive marketing tactics intended to mislead the State of Louisiana and other clients regarding the quality and pricing of their investment services and products."[81] Plaintiff's advances two arguments in favor of LUTPA liability: (1) Hilltop "made false and misleading statements concerning [its] financial services," and (2) Hilltop was somehow involved with, or had knowledge of, the alleged conspiracy which caused it to fraudulently price securities sold or bought to or from Plaintiff.[82] Notably, Plaintiff uses the word "defendant" throughout its LUTPA argument in the *Opposition* and in the *Second Amended Complaint*; Hilltop is not specifically named.

Plaintiff has failed to allege a LUTPA violation even under the more lenient *Twombly/Iqbal* standard. While Plaintiff asserts that Hilltop "repeatedly made false and misleading statements concerning their financial services," Plaintiff identifies one statement or representation. Plaintiff alleges that Hilltop authored a presentation wherein it purported "to provide expert financial guidance…"[83] However, that presentation was authored in April of 2017,[84] making it entirely irrelevant to the events giving rise to this

---

[78] Rec. Doc. No. 159, pp. 4–6.
[79] *Lone Star Ladies Inv. Club v. Scholtzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).
[80] *Pinero v. Jackson Hewitt Tax. Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009); *US Fire Pump Co., LLC v. Alert Disaster Control (Middle E.) Ltd.*, 2021 WL 296073, at *18 (M.D. La. Jan. 28, 2021).
[81] Rec. Doc. No. 153-1, p. 12.
[82] *Id*. at 12.
[83] Rec. Doc. No. 130, p. 89.
[84] *Id*. at n. 39.

suit which allegedly occurred between 2009 and 2016.[85] As such, Plaintiff has failed to allege that Hilltop made a misrepresentation in violation of the LUTPA.

Plaintiff's second argument is that:

> During the relevant period, Defendant knew about, maintained and in some instances directly participated in an antitrust conspiracy concerning GSE bonds. Nevertheless, they conspired to deceptively and deliberately conceal these antitrust activities and sell securities at supra-competitive prices to their client, the State of Louisiana, all while collecting substantial fees.

There are no allegations in the *Second Amended Complaint* to suggest that Hilltop knew about the alleged conspiracy. Plaintiff, in fact, dropped its Sherman Act claims against Hilltop, implicitly recognizing the lack of a factual basis for these claims.[86] Having failed to allege that Hilltop was part of the alleged conspiracy, Plaintiff cannot maintain that Hilltop injured Plaintiff by participating in the alleged conspiracy and hiding that participation.

Plaintiff's LUTPA claims against both parties are dismissed with prejudice.

---

[85] *Id*. at p. 2.
[86] Rec. Doc. No. 153-1, p. 2.

65162

III.    **CONCLUSION**

For the foregoing reasons, Baird's and Hilltop's *Motions*[87] are GRANTED. Plaintiff has now filed three *Complaints*. There is no reason to believe that on a fourth try, Plaintiff would finally cure these deficiencies. This action is therefore dismissed with prejudice as to Baird and Hilltop.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 31, 2021</u>.

_Shelly D. Dick_
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[87] Rec. Doc. Nos. 143 and 150.

65162